Judgment affirmed, with costs and ten per cent penalty.

———————

## NEW YORK COMMON PLEAS.

ELLIOTT WALKER agt. THE DRY DOCK, EAST BROADWAY AND BATTERY RAILROAD COMPANY.

Where a *city railroad company* are authorized, under the United States revenue act, to issue passage tickets in multiples of twenty, to the price of which an amount equal to the revenue tax is added; and where they issue a main ticket signed by their principal officers, to which is attached twenty coupon tickets, the main ticket containing a notification that each ticket attached entitles the owner to one ride in the company's cars, and that the *conductor alone is authorized to tear off the tickets:*

*Held,* that this regulation being a reasonable one, no passenger having such a

main ticket, with coupon tickets attached, is authorized to detach the latter from the main ticket and present it to the conductor, and at the same time refuse to show the main ticket. In such case he may be properly ejected from the cars.

*June Term,* 1867.

*Before* DALY, *F. J.,* BRADY *and* CARDOZO, *Judges.*

THIS action was commenced in August, 1866, against the above named railroad company, to recover forty-five dollars damages claimed by the plaintiff because of his having been, as he alleged, improperly ejected from one of the defendants' railroad cars by the conductor, for refusal to pay fare.

Upon the trial of the cause before Justice BARRETT, of the sixth district, and a jury, the plaintiff proved that on the 16th of August, 1866, he was a passenger on one of the defendants' cars; that he had previously purchased at the office of the company a package of twenty tickets, being one main ticket with nineteen smaller tickets attached in coupon form. Upon each of the smaller tickets were printed the words: "One ride due the person to whom issued; not good unless torn off by the conductor." The main ticket was signed by the president and another officer of the company, and across its face at the time of purchase the plaintiff's name was written. The plaintiff himself detached two of the small tickets, which he tendered in payment of the fare of himself and friend. He did not exhibit the main ticket with its signature to the conductor, nor would he pay fare except with the tickets he had detached, although he testified he had read the tickets and knew of the regulation that they were only to be torn off by the conductor. He therefore was ejected, but with no unnecessary force, and brought this action to test the legality of such regulation.

When the testimony on the part of the plaintiff closed, defendants' counsel moved to dismiss the complaint, and insisted that the plaintiff had failed to establish any cause of action, because:

*First.* The act of congress known as the revenue law, as

amended July 13, 1866, in pursuance of which the tickets purchased by the plaintiff were issued by its provisions, does not contemplate the sale of single tickets, but requires that tickets shall be sold in packages of twenty, or multiples of twenty, so that the precise tax imposed by law may be collected, and the form of the ticket is in that view unobjectionable. The same law also provides that where the tax amounts to the fraction of a cent, in default of a ticket, the company may collect from any passenger the full cent in lieu of such fraction.

*Second.* A railroad company has the undoubted legal right, established by a long current of authorities, to prescribe and enforce such rules and regulations as are proper to promote the comfort and safety of their passengers, to insure the payment of the regular fare, and to protect the company from imposition or wrong. A willful or heedless neglect by a passenger of reasonable regulation, actually or by strong inference made known to him, exempt them from any liability for the consequences. He forfeits his right to ride, and the conductor is lawfully authorized to eject him.

*Third.* The acceptance of a railroad ticket by a passenger constitutes a contract between him and the company, and it is only by a compliance with the terms of the contract that he is entitled to transportation. He is also presumed to know, and bound to observe, the reasonable rules and regulations of the company. The only question to be deter- in this case is, whether the regulation is reasonable; and this is always a question of law for the court, which it would be error to submit to the jury. (15 *N. Y. R.* 455; 20 *N. Y. R.* 126.)

*Fourth.* This regulation was plainly reasonable and just. The law compels the defendants to issue tickets or pay the tax themselves. In every other form of tickets which have been adopted or used by city railroad companies, opportunities for frauds have arisen. The tickets have been forged. This style of ticket is intended to prevent such fraud, and is admirably adapted for that purpose. The con-

ductor is required to inspect the main ticket bearing the two signatures, with which he is acquainted, to ascertain that it is genuine; otherwise any one may print and use the small tickets, and so defraud the company.

Justice BARRETT concurred in these views, and the plaintiff was nonsuited. He then appealed to the court of common pleas, where the cause was argued in January last.

GEORGE A. BLACK, *for plaintiff and appellant.*

I. The point in this case turns upon the following allegation of the complaint: "That on said occasion plaintiff tendered to the defendants one of said tickets so sold by defendants to plaintiff, and offered the same in payment for the transportation aforesaid; and that defendants refused to receive the same, and refused and failed to carry plaintiff on their road, and ejected him from their cars.'

The only defense for such conduct, offered on the part of the defendants, was, that the tickets sold by them to plaintiff contained sufficient on their face to give them rights, with respect to this passenger, greater than those they could exercise over others paying their fare in cash to the conductor; so that the traveler who bought twenty tickets, and paid for them the exact fare fixed by law, paid for something which put him in a worse position than he who paid for each ride separately.

If this is the correct view, the plaintiff cannot recover, but that it is not is plain, for the following reasons:

This whole proceeding is founded upon the section of the United States internal revenue law which requires railroad companies to sell "tickets, in packages of twenty and multiples of twenty, to the price of which only an amount equal to the revenue tax shall be added." (§ 103 *Int. Rev. Act, as amended July 13, 1866.*)

The testimony of William Richardson, president of the defendants, shows that these tickets were sold in pursuance of this law.

What "tickets" means in this law, in connection with

railroad companies, has been well settled, and the authorities are all uniform. "It" (a ticket) "is a memorandum, voucher and receipt for the fare, and cannot be regarded as an agreement." (*Perkins* agt. *New York Central Railroad Company*, 24 *N. Y. R.* 201.)

"A ticket serves a threefold purpose. It is evidence in the passenger's hands that he has paid his fare and has a right within the cars. It insures the payment of the passage money by all who take seats, and when redelivered to the company, is a voucher against the office or agent who issued it." (*Vedder* agt. *Fellows*, 20 *N. Y. R.* 126; *Nevins* agt. *Bay State Steamboat Company*, 4 *Bosw.* 425; *McCotter* agt. *Hooker*, 4 *Seld.* 497; *Hibbard* agt. *N. Y. and Erie Railroad Company*, 1 *Smith*, 458; *Quimby* agt. *Vanderbilt*, 17 *N. Y. R.* 306; *Webster's Dictionary*, *verb*, *Ticket*.)

Therefore, when the plaintiff applied to the defendants to purchase twenty tickets, under the revenue law, he went to buy a well defined article, whose price was fixed by law. The defendants agreed to sell the article, and then attempted to cheat the plaintiff, by delivering something which the court is urged to declare different from what it agreed to sell; in other words, to assist the defendants to carry out its fraud.

1. The terms on tickets sold did not make a contract, for the reasons following:

1st. The plaintiff never assented to them; never, in fact, had an opportunity to assent. (*See testimony of plaintiff; Nevins* agt. *Bay State Steamboat Co.* 4 *Bosw.* 225.)

2d. There was no consideration to support the contract, even if it be deemed one, "*ex nudo pacto non oritur actio*." (*Broom's Max. p.* 583; *Smith* agt. *N. Y. Cen. Railroad Co.* 24 *Smith*, 247.)

3d. It was void, being unstamped. (*U. S. Int. Rev. Law*, § 158.)

2. As a regulation, the terms contained in the tickets cannot be sustained.

As a preliminary point, it may be stated that the court is to decide on the question of the reasonableness of a regu-

lation, when the facts are undisputed. (*Hibbard* agt. *N. Y. and Erie Railroad Co.* 1 *Smith,* 459; *Vedder* agt. *Fellows,* 20 *N. Y. R.* 126.)

But it may be left to the jury to say whether the conduct of the company was intended to harass. (*Hibbard* agt. *N. Y. and Erie Railroad Co.*)

Various regulations have been held to be reasonable, such as the surrender of tickets when demanded (*North R. R. Co.* agt. *Page,* 22 *Barb.* 130); exhibiting ticket when called upon (*Hibbard* agt. *N. Y. and Erie R. R. Co.* 15 *N. Y. R.* 455) indorsing ticket for identification, when the passenger lies over (*Beebe* agt. *Ayres,* 28 *Barb.* 275); and the public does not lose the right to complain of any unreasonable practice by voluntarily taking seats in the cars. (*Vedder* agt. *Fellows,* 20 *N. Y. R.* 131.)

The regulation must be reasonable, or the public is not bound by it. (*Beebe* agt. *Ayres,* 28 *Barb.* 275.)

II. Were these regulations reasonable?

1. "They made the tickets not transferable."

1st. By actual statement to that effect on the tickets.

2d. By making them invalid if separated.

These tickets are property purchased and paid for by the plaintiff, and this regulation is intended to deprive him of the benefit of his ownership. It deprives him of an essential element of property, the right to transfer it. (*Wynehammer* agt. *The People,* 3 *Kern.* 395.)

Tickets like these are transferable by delivery. (*Hibbard* agt. *N. Y. and Erie R. R. Co.* 1 *Smith,* 439, 465; *North R. R. Co.* agt. *Page,* 22 *Barb.* 132.)

2. They make the tickets invalid unless separated by the conductor, and only good to pay the fare of the person to whom issued.

3. This regulation is burdensome and unreasonable.

1st. The plea in defense of the first part of the rule is, that the small tickets are susceptible of forgery, and that the company, to protect itself, has a right to see that they are connected with the main ticket signed by its officers. The answer is, let the officers sign all the tickets. It

requires the passenger to carry all the tickets printed on this paper, as they are, and subject to wear and obliteration, till they are all used.

The trouble, delay and inconvenience of producing them all for inspection, and restoring them when returned to his custody, is compensated by no convenience to the passenger.

2d. It requires the personal identification of the passenger, at the whim of the conductor.

3d. It prohibits owners of the tickets using the tickets to pay the fare of even his wife or child. In the case before the court, the plaintiff offered one of the tickets to pay the fare of his companion; it was refused.

4th. As an entirety, the terms of these tickets have been prepared by unscrupulous men, to evade and render nugatory the benefits intended to be secured to the public by the act of congress; to burden their use with such restrictions as to prevent their purchase, and thus give to the grasping corporation the right to plunder the public by law for a few months longer.

III. The justice erred in ruling that the defendants' counsel need not state what he desired to prove by the ticket, after a demand made by the plaintiff. (*Beal* agt. *Finch*, 1 *Kern.* 135.)

The plaintiff should have judgment.

ROBINSON & SCRIBNER, *for defendants and respondents.*

I. The act of congress known as the revenue law, as amended by act approved July 13th, 1866, in pursuance of which the tickets purchased by the plaintiff were issued, by its provision, does not contemplate the sale of single tickets by railroad corporations engaged in business, such as the defendants, but requires that the tickets shall be sold in packages of twenty or multiples of twenty, in order that the precise tax imposed by the act may be collected by the company, as the agent of the government. The form of the tickets is in that view unobjectionable.

II. The defendants, a railroad corporation, in the direction and management of their business, have an undoubted right, for the proper execution of their difficult and responsible duties, to prescribe and enforce such rules and regulations as are proper, to insure the comfort and safety of their passengers, and to *protect the company from imposition and wrong.* They have the right to require that their passengers shall preserve order, and that they shall abstain from any act which tends to impede, interrupt or interfere with their conductors and managers in the transaction of their necessary business. Some of these regulations are necessary to insure the safety of the passengers themselves, *others to insure the payment of the regular fare and to protect the carrier from imposition.* This is the language of the court in the case of *Hibbard* agt. *N. Y. and Erie Railroad Co.* (15 *N. Y. R.* 463).

The same principle has been affirmed in numerous other adjudications, and the absolute legal right of a railroad company to establish such reasonable rules and regulations is distinctly recognized in the decisions of the following other cases : *Northern R. R.* agt. *Page* (22 *Barb.* 130), *Beebe* agt. *Ayres* (28 *Barb.* 276), *Barker* agt. *Coflin* (31 *Barb.* 556), *Hibbard* agt. *N. Y. and Erie Railroad* (*supra*).

The passenger owes a corelative duty to the company which he is bound to observe. They are to take care of him, but he is also, in many respects, to take care of himself; and a wilful or heedless neglect of reasonable regulations, actually or by strong inference made known to him, exempts them from any liability for the consequences. *He forfeits his right to ride, and the conductor is lawfully authorized to eject him.* (*Paige* agt. *N. Y. Central Railroad*, 6 *Duer*, 529 ; *Hibbard* agt. *N. Y. and Erie Railroad*, 15 *N. Y. R.* 455.)

III. The acceptance of a railroad ticket by a passenger constitutes a contract between him and the company, and it is only by compliance with the terms of the contract that he is entitled to transportation. He is also presumed to know, and *bound to observe*, the reasonable rules and regula-

tions of the company. (*Wells* agt. *N. Y. Central Railroad Co.* 24 *N. Y. R.* 181; *Perkins* agt. *Same*, 24 *N. Y. R.* 196; *Barker* agt. *Coflin*, 31 *Barb.* 556; *Hibbard* agt. *N. Y. and Erie Railroad*, 15 *N. Y. R.* 455.)

IV. The authorities before cited establish fully the absolute necessity of the company to make and enforce regulations to protect themselves against imposition and fraud on the part of dishonest passengers or their own agents and employees, and the only question to be determined is, whether the regulations are reasonable. This question is one of law, to be determined by the court, and it is error to submit it to the jury. (*Hibbard* agt. *N. Y. and Erie Railroad*, 15 *N. Y. R.* 455; *Vedder* agt. *Fellows*, 20 *N. Y. R.* 126.)

V. The regulation in this case was plainly reasonable and just, for the following, among other reasons :

1. All experience proves that the management of railroads to insure the comfort and safety of passengers, and the same time to protect the company from imposition, is difficult. By the act referred to in first point, the company are required and may be compelled to adopt the ticket system in the operation of their business, in order to collect the tax imposed by law upon the traveling public, or to pay the tax themselves. In every other form of the ticket which has been adopted or used by city railroad companies, opportunities for fraud have arisen.

2. The tickets *have been forged*, and the court can readily see how, by this means, wrongs may be practiced against the company.

3. In default of a ticket, the company are authorized to collect the full sum of one cent in excess of the usual fare; and as less than one-half of the traveling public choose to avail themselves of the use of tickets, opportunities are offered to conductors to purchase and turn in by stealth tickets for each passenger, thereby defrauding the company of a large percentage of their cash receipts.

4. The tickets adopted by the defendants, and one of which was sold to the plaintiff, are designed to prevent these frauds and impositions, and are well calculated for that pur-

pose. The main ticket is issued to the individual passenger by name, and has *the signatures of two of the officers of the company attached;* and the instruction or regulation is *reasonable,* that the smaller tickets shall be torn off by the conductor, in order that he may at all times be able to *inspect* the main ticket, to ascertain that it is a genuine ticket of his company; otherwise any one may print and use the small tickets, and so defraud the company.

VI. The regulation that the small ticket was only to be torn off by the conductor is plainly printed thereon, and was well known to the plaintiff, and by his acceptance of the ticket he contracted to observe that regulation. (*Cases cited supra.*)

VII. The plaintiff having willfully neglected to observe the reasonable regulations of the company, he was lawfully ejected.

VIII. The plaintiff, as appears from his own testimony, had no cause of action whatever. He paid nothing for transportation by any other conveyance, and proved no damage. On the contrary, it distinctly appears that the identical ticket tendered by the plaintiff at the time of his ejection was afterwards received by one of the conductors of the defendants' railroad, and the plaintiff was allowed the single passage to which he claimed he was entitled by virtue of the ticket, and accepted performance of the entire obligation it imposed or conferred, so that the contract of the defendants was in any view entirely fulfilled on their part.

IX. There was no ground for the plaintiff's objection to the admissibility of the testimony respecting the contents of the tickets. Due notice to produce the ticket had been served, and that notice, with admission of service, was before the court.

X. The judgment appealed from should be affirmed, with costs.

*By the court,* DALY, F. J. This judgment was right. The defendants were authorized by the internal revenue act, as amended July 13, 1866 (§ 103), to issue tickets in multiples

of twenty, to the price of which an amount equal to the revenue tax was to be added; and where tickets were not purchased, they were authorized to charge six cents for each passenger. The defendants issued a main ticket, signed by two of the officers of the company, at the end of which, and upon the same sheet, twenty tickets were printed, the main ticket containing a notification that each ticket attached entitled the owner to one ride in the company's cars, and that the conductor alone was authorized to tear off the tickets. The regulation in respect to the tearing off of the tickets was a reasonable one, as the tickets could be easily forged by simply printing them; but if the main ticket, with the coupon attached, had to be presented to the conductor, and it was reserved to him alone to tear off the coupon, an opportunity was afforded him to see by the inspection of the main ticket that each coupon received for a ride was genuine. This course of procedure served to protect the company from imposition and fraud, and required at the hands of the passenger nothing that was unreasonable. The plaintiff knew of the regulation, but refused to comply with it, and was put off from the car. He had nothing to complain of, and the action he brought was properly dismissed.