wards of 78, and it was this price that it would appear that the jury allowed the plaintiff as the damages caused to him by the sale of the stock; but I think he was entirely too late in disaffirming the transaction, and that his delay in disaffirmance was an implied ratification, and that he cannot now recover for any damages for the sale of this Union Pacific stock.

HOUGHTON, J., concurs.

(118 App. Div. 248)

### KETCHUM v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department. March 15, 1907.)

1. CARRIERS—TRANSPORTATION OF PASSENGERS—TRANSFERS.

Under Railroad Law, § 105 (Laws 1890, p. 1114, c. 565), imposing a penalty for failure of street railroad companies to give transfers, a regulation fixing one point in each trip at which a passenger wishing a transfer must demand it is reasonable and valid.

2. SAME.

Where a city railroad company gives transfers good at any transfer point, or permitting the passenger to continue to the end of the line without paying an additional fare, a regulation requiring a passenger to demand his transfer at the time of paying fare is reasonable and valid.

3. SAME—PUBLICATION OF RULES.

Where a city railroad company posted conspicuously, and advertised in such manner as to bring to the notice of the public generally, a rule requiring passengers to demand transfers at the time of paying fare, it is immaterial whether a particular passenger had knowledge of the rule.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 996.]

Appeal from Appellate Term.

Action by Jauncey Ketchum against the New York City Railway Company. From a judgment of the Appellate Term, affirming a judgment of the Municipal Court in favor of plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

James L. Quackenbush, for appellant.
E. V. R. Ketchum, for respondent.

SCOTT, J. This appeal involves only the question as to the reasonableness of a rule adopted by the defendant corporation requiring that passengers desiring transfers must obtain them from the conductor at the time of paying fare, and that no transfers will be issued on the cars at any other time.

The defendant owns, or controls and operates, a large number of street car lines in the city of New York, some running approximately north and south, and others approximately east and west; the intersecting points being transfer points. The statutory duty to give transfers is contained in section 105 of the railroad law (Laws 1890, p. 1114, c. 565), and reads as follows:

"Every corporation entering into such contract shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of said corporations for a single passenger. Every such corporation shall upon demand and without extra charge, give to each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point or portion of the railroads embraced in such contracts, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad, with a single rate of fare. For every refusal to comply with the requirements of this section the corporation so refusing shall forfeit fifty dollars to the aggrieved party."

It is to be noted that the statute does not contemplate the giving of a transfer to every passenger, but to any passenger who, wishing to make a continuous trip, shall demand a transfer. The plaintiff's contention is that the statute gives to each passenger the absolute right to demand a transfer at any time during the trip, and that to fix one particular time at which alone such a demand will be complied with is unreasonable and unlawful. The defendant urges that the regulation adopted by it complies with the statute, is reasonable, and therefore lawful. That a common carrier of passengers not only has the right, but is bound, to make rules and regulations to insure the safe, effective, and comfortable operation of its corporate business, is undoubted (Barker v. Central Park, etc., R. R. Co., 151 N. Y. 237, 45 N. E. 550, 35 L. R. A. 489, 56 Am. St. Rep. 626; Montgomery v. Buffalo R. R. Co., 165 N. Y. 139, 58 N. E. 770), and it is equally clear that it is entitled to adopt and enforce rules designed to protect itself against fraud and imposition. As was said in an early case:

"Such regulations as will enable a railroad to execute its difficult and responsible duties, insure the comfort and safety of its passengers, and protect itself from wrong and imposition it has an undoubted right to prescribe, provided such regulations are reasonable and just." Hibbard v. N. Y. & Erie R. R. Co., 15 N. Y. 463.

The first duty of a railroad company is undoubtedly to its passengers, and its highest obligation to obey the law. Subject to the performance of these duties and obligations, it is its right to protect itself; for with the duty of carrying passengers is coupled the right of receiving lawful compensation therefor. Hence it has been held in many cases that it was within the right of a railroad company to make regulations to insure that no passenger who failed to pay his fare should be carried, and these regulations have often been upheld, even if they imposed some slight inconvenience upon the passenger. It is of common knowledge that upon steam railways generally, and upon the elevated and underground railways in this city, passengers are required to pay full fare before entering the cars, and consequently before any service has been rendered, but no case has questioned the reasonableness of this regulation. In Walker v. Dry Dock R. R. Co., 33 How. Prac. 327, it was held by the General Term of the Court of Common Pleas that, where coupon tickets were sold, a regulation that the coupons must be torn off by the conductor, and would not be received if otherwise detached, was a reasonable regulation to protect the

company from imposition. In Elmore v. Sands, 54 N. Y. 512, 13 Am. Rep. 617, a regulation that a ticket must be used on the day it was purchased was held to be a reasonable rule to protect the company from fraud. So, also, it has been held reasonable to require a passenger to show his ticket when required by the conductor to do so (Hibbard v. N. Y. & Erie R. R. Co., supra); and to require passengers to surrender tickets before reaching the station nearest their destination without receiving any other evidence of the payment of fare (Vedder v. Fellows, 20 N. Y. 126). Many other cases might be cited to the same general effect, but it is unnecessary to multiply authorities to support a doctrine so well established as that a railroad company may adopt and enforce rules respecting the conduct of its business for its own protection, provided they do not seriously inconvenience their passengers, or subject them to probable loss, or deprive them of any right to which they are entitled by law.

In considering the reasonableness of the rule sought to be upheld by this defendant, two questions present themselves: First, is it reasonable to fix upon some one point in each trip at which a passenger wishing a transfer must demand it? and, secondly, is it reasonable to fix as that point the time at which the fare is paid, instead of some other time, as, for instance, when the passenger alights? It is certain that each passenger is entitled to but a single transfer, and the company is clearly entitled to protect itself, if possible, against dishonest passengers who might seek to obtain more than one. The evidence shows, and common experience verifies the fact, that at certain hours the defendant's cars are very crowded, and it would be imposing upon the conductors an impossible task to require them to carry in memory every passenger to whom has been given, in the course of a long trip, a transfer, and, although in a given case a conductor might be quite sure that he had given a transfer to a demanding passenger, the heavy penalty imposed by the railroad law in case of refusal, with the impossibility of producing any proof beyond his own recollection, would make it very hazardous to refuse to give a transfer upon demand. If, therefore, the statute must be so construed as to entitle a passenger to demand and receive a transfer at any time during his trip, the company would be practically powerless to protect itself against repeated demands by the same passenger. It does not in our opinion require such a construction, and we consider that it is reasonable to make a rule fixing upon a definite point in each trip when the right to demand a transfer shall be exercised. Is it reasonable to fix the time at which the fare is paid as the time for making the demand? Assuming that some one point of time may lawfully be fixed, there are two obvious points which suggest themselves as appropriate. One is the time of paying the fare. The other is the time of disembarking at the point of intersection. While it is the duty of the court when called upon to pass upon the reasonableness of a regulation, it is no part of its duty to make regulations, or even to suggest alternatives, for those made by the company. Prima facie, when it comes to a question of choice between two possible methods, the judgment of the managers of the railroad is entitled to some weight, for they are to be presumed

to be cognizant of the conditions, requirements, and difficulties of the service, and it is not to be lightly assumed that they have adopted a regulation without due reflection, or that they deliberately seek to avoid their statutory obligations.

It was suggested upon the argument that there were two reasons why it would be inconvenient, and perhaps dangerous, to the traveling public generally to fix the time of disembarkment at the transfer point as the time of giving out transfers on demand. One reason was that at this particular time the conductor will probably be quite sufficiently occupied in seeing to the safety of the passengers who might be getting off and on the car. The other reason was that, if the transfers were given out as passengers disembarked, the stops would necessarily be longer at points of intersection, and thus the general movement of the cars would be retarded. It cannot be said that these reasons are without weight. In considering the reasonableness of the particular regulation in question, it is proper to consider the system of transfers adopted by defendant, of which proof was made in the court below, and which, as we consider, have an important bearing upon the reasonableness of the rule now under consideration. As already said, the system of railroads operated by defendant includes a number of longitudinal lines, running approximately north and south, and a number of intersecting transverse lines, running approximately east and west. Under the system adopted by defendant a passenger starting to ride upon a longitudinal or a transverse line, as the case may be, and receiving a transfer, may, at his option, use the transfer at any point of intersection, or may not use it at all, but may, notwithstanding he has taken a transfer, continue on the line upon which he started to the end of the route; and he is not called upon to decide when demanding the transfer at what point he will use it, or whether he will use it at all. Under this system the only passenger likely to be inconvenienced because he had not demanded a transfer upon commencing his journey would be one who started without the intention of transferring, and then, during the trip, changed his mind. We see no reason to suppose that such cases would be at all numerous. We are therefore of the opinion that the regulation in question, considered with respect to the system of transfers now in operation, is reasonable and lawful. Of course, if the defendant should hereafter adopt a less liberal transfer system, as, for instance, requiring a passenger at the time of taking a transfer to irrevocably determine at what point he would transfer, or whether he would transfer at all to another line, a very different question as to the reasonableness of the rule now under consideration might be presented. The evidence shows that the rule has been posted conspicuously and advertised in such manner as to bring it to the notice of the traveling public generally. There is reason to believe that plaintiff knew of the existence of the rule, and demanded a transfer in violation of it expressly to lay a foundation for this action, but whether he actually knew of the existence of the rule or not is immaterial, so long as it had been properly and reasonably advertised, as we think it had been. Barker v. Central Park R. R. Co., supra.

It follows that the judgment of the Appellate Term and of the Municipal Court must be reversed, and a new trial granted, with costs in this court and in the courts below to appellant to abide the event. All concur.

LAUGHLIN, J. (concurring). I concur in the opinion of Mr. Justice SCOTT, but wish to specially emphasize some points and limit my views on others.

As this appeal is presented to us, the rule requiring that passengers desiring transfers shall demand the same at the time of paying their fares is reasonable. The defendant is issuing transfers not for particular points or lines, but good at any point, and we are informed by the learned counsel for the defendant who argued the appeal that it accords to passengers the right to remain on the car on which a transfer has been obtained to the end of the line without using the transfer. It is quite likely that the defendant would have the right to limit the transfers to particular points or lines, and require the passenger to elect at what point he wishes to transfer, and it is not at all clear that a passenger would have the right, against the will of the company and without paying another fare, to remain on the car on which he received a transfer after passing the connection for which the transfer was given, or the last transferring point on the line. If the company should assert either of these rights, then it may well be doubted whether this rule could be deemed reasonable. In the present circumstances, however, and while the transfers are unlimited as to the points at which they may be used, and while the company permits passengers after receiving transfers to remain on the car to the end of the line, without using them, the rule requiring the passengers to elect on paying their fare whether or not they desire transfers can work no injustice to the traveling public, at least not after the people understand that they are entitled to demand a transfer, and use it or not, as they like. The passenger may protect himself in all cases where there is a possibility that he may need a transfer by demanding one on paying his fare. Since the passengers may enjoy all of their rights under this rule, being at liberty to demand a transfer in all cases on paying their fare, and to use it or not as they like, and it is deemed essential to the protection of the company against demands for more than one transfer by a single passenger, and demands for transfers by those who have not paid their fare, it should be upheld by the courts as reasonable.