time no light in the hall, which was upon the fourth floor. As she was proceeding cautiously and slowly down a flight of stairs leading from that floor, clinging to the banisters, she tripped or slipped upon something soft or wet upon the third stair from the top, and fell, receiving severe injuries. She testified that when she fell she felt some paper underneath her feet. As to there being no light in the hall she was fully corroborated. There were lights on the first and second floors, but none upon the third and fourth floors at this time.

The failure to have a light at the time of the accident, it being after sundown, was evidence of negligence on the part of the landlord; it being a violation of Tenement House Act, Laws 1901, p. 889, c. 334. Shields v. Pugh & Co., 122 App. Div. 586, 107 N. Y. Supp. 604. Neither could it be said that as a matter of law the plaintiff was guilty of contributory negligence. She was proceeding slowly and carefully, clinging to the banisters, and feeling her way with her feet. In the case of Greenfield v. Doepfner, 49 Misc. Rep. 651, 97 N. Y. Supp. 1043, this court said:

"The evidence that the hall and stairway were insufficiently lighted and that this was the immediate cause of the accident is quite satisfactory. We may not say as a matter of law that the plaintiff was guilty of contributory negligence, because she only steadied herself against the banister without actually grasping it"—citing Brown v. Wittner, 43 App. Div. 135, 59 N. Y. Supp. 385.

A reading of the cases cited by the respondent as being analogous to the facts in this case does not sustain his contention. The facts and circumstances in the cases cited are clearly distinguishable from those in the case at bar.

The point is made that there is no evidence tending to show that the defendants had charge of or were in control of the premises at the time of the accident. There is evidence from which it may reasonably be inferred that such was the case. Moreover, the motion for a dismissal was made upon specific grounds therein set forth, and that ground was not mentioned. Undoubtedly, had that been done, the defect, if any existed, could have been remedied, and it is too late for the respondent to raise it for the first time upon appeal. The question of the negligence of the defendants and the contributory negligence of the plaintiff should have been submitted to the jury.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.

---

### McCARTHY v. INTERNATIONAL RY. CO.

(Supreme Court, Appellate Division, Fourth Department. May 6, 1908.)

CARRIERS—REGULATION—PASSENGER TRANSPORTATION—OVERCHARGE—PENALTY.
    Railroad Law, Laws 1890, p. 1096, c. 565, § 39, provides that any railroad asking or receiving more than the lawful rate of fare, except through inadvertence or mistake not amounting to gross negligence, shall forfeit $50 to the party paying same. Plaintiff entered defendant's street car

and received a transfer, which the conductor of the second car refused to accept because improperly punched. Under the company's rules the conductor could not accept the transfer unless the time punched thereon corresponded to the time it was presented, and plaintiff was required to pay a second fare. Defendant's business during the past year had been very large, it having issued some 32,000,000 transfers and carried 96,-000,000 persons, and its cars ran at intervals of 10 minutes, and on the trip when plaintiff's transfer was issued the conductor issued 22 such transfers, and it did not appear that he had ever before made such mistake. *Held,* that the act of the conductor in issuing an incorrectly punched transfer was a mistake which under the circumstances even a prudent man might have made, and he was not guilty of gross negligence, and plaintiff could not recover under the statute, which was intended to apply only to intentional wrong or reckless carelessness by the railroad company.

Appeal from Municipal Court of Buffalo.

Action by Timothy McCarthy against the International Railway Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Morton, Penny & Sears and Dana L. Spring, for appellant.
Newton & Gerrodette, for respondent.

WILLIAMS, J.   The judgment should be reversed, with costs. The action is to recover a penalty under section 39 of the railroad law (chapter 565, p. 1096, Laws of 1890), which reads as follows:

"Section 39. Penalty for Excessive Fare. Any railroad corporation which shall ask or receive more than the lawful rate of fare, unless such overcharge was made through inadvertence or mistake, not amounting to gross negligence, shall forfeit fifty dollars, to be recovered, with the excess so received, by the party paying the same" (balance unimportant here).

The questions here involved are whether the overcharge of fare in this case was through inadvertence or mistake, or whether it amounted to gross negligence. The plaintiff entered one of defendant's street cars, paid his fare, and asked for and received from the conductor a transfer for another line. He left this car at the transfer point, and entered a car on the second line. Upon offering the transfer, the conductor refused to receive it, and compelled plaintiff to pay another fare. The transfer was improperly punched as to time. It was punched 12:30 p. m. It should have been 2:30 p. m. Under the rules of the company the second conductor could not accept the transfer; it being then 2:30 p. m. The plaintiff was entitled to ride upon the second line upon a proper transfer, so as to pay but one fare on both lines. He was overcharged the second fare, by reason of the transfer being improperly punched by the first conductor. The defendant's business during the year 1907 was very large. It had 145 transfer points, and employed 754 conductors. During the 11 months from January 1 to December 1, 1907, it issued 32,475,091 transfers and carried 96,587,325 passengers. The cars ran at intervals of 10 minutes. The overcharge in question was on September 24, 1907, and on that trip by the conductor of the first car he issued 22 transfers and carried 44 passengers.

· Neither the plaintiff nor the conductor who issued the transfer was sworn, nor was there any stipulation as to the act of the conductor, how he came to improperly punch the transfer, and whether it was done intentionally or by mistake. It was stipulated merely that he did it. There seems to be no claim that the conductor intended to punch the transfer improperly. He had no interest or motive to do so. He gained nothing. by it himself, and it does not appear he knew the plaintiff, or had any desire to injure him. It was a mistake, pure and simple; one liable to occur if the conductor was ordinarily the most careful of men. Men are imperfect, and will sometimes make mistakes, in spite of their best efforts to be careful. This conductor was almost continually issuing these transfers. He issued 22 and carried 44 passengers on this one trip. There were 32,500,000 of transfers issued on defendant's road in 11 months of 1907, and 96,500,000 of passengers carried during that time. This conductor had to collect fares, look after the passengers as they entered and left the car at different points, direct the stopping and starting of the car, and perform all the duties of conductor, besides issuing transfers.

It does not appear that he frequently, or ever before, made such a mistake as the one he is charged with here. Under the facts stipulated, and those alone, he should not have been found to be guilty of gross negligence in improperly punching this transfer. This penal statute was never designed to cover such a case as this. It was designed only to cover intentional wrong or reckless carelessness in these particulars in the transaction of the business of a railway company. It was designed for the correction of real evils, and not to enable individuals to recover penalties in cases of occasional mistakes, liable to occur, in case of the most careful conductors. The trial court erred in finding this to be a case of gross carelessness, and awarding judgment for plaintiff for the penalty. "In the enforcement of a statute giving a penalty, if there is reasonable doubt, the party of whom the penalty is claimed, is to have the benefit of it." Chase v. N. Y. C. R. R. Co., 26 N. Y. 525; Goodspeed v. Ithaca Street Ry. Co., 184 N. Y. 351, 77 N. E. 392.

Judgment reversed, with costs. All concur.