close, the city was not liable, because no actual notice is shown to have been given as required by the charter. Consequently any release that was executed by plaintiff's intestate would not bar a subsequent action against the real tort-feasor. A release in favor of a party who was not a joint tort-feasor with this defendant, who paid money to buy his peace, would not release the real offender. Hirschfield v. Alsberg, 47 Misc. Rep. 141, 93 N. Y. Supp. 617.

If I am correct in these conclusions, it follows that this motion must be denied, with $10 costs to abide the event.

Ordered accordingly.

---

### BINGEMANN v. INTERNATIONAL RY. CO.

(Supreme Court, Special Term, Erie County. September 14, 1911.)

1. APPEAL AND ERROR (§ 168*)—WAIVER OF OBJECTION TO RIGHT OF APPEAL.
   Where the question of the right to appeal is not raised, any objection is waived, and the order appealed from will be reviewed on the merits.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1015–1017; Dec. Dig. § 168.*]

2. APPEAL AND ERROR (§ 927*)—DISMISSAL OF COMPLAINT—TRUTH OF ALLEGATIONS.
   On appeal from an order denying defendant's motion to dismiss the plaintiff's complaint, and render judgment on the pleadings, all of the allegations of the complaint must be regarded as true.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 4024; Dec. Dig. § 927.*]

3. CARRIERS (§ 20*)—RATES—STATUTORY PROVISIONS.
   Railroad Law (Laws 1890, c. 565) § 101, which provides that a street railroad shall not charge any passenger more than five cents for one continuous ride from any point on its road or any road or branch operated by it or under its control to any other point thereon, or any connecting branch within the limits of any incorporated city, must be read in conjunction with section 39, which imposes a penalty on any road which shall ask or receive more than the lawful rate of fare.

   [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

4. CARRIERS (§ 12*)—PASSENGER RATES—TRANSFERS.
   Railroad Law (Laws 1890, c. 565) § 101, which entitles a passenger to one continuous trip over the most direct route of a street railroad or any line or branch operated by it or under its control within city limits for five cents, does not require that any railroad corporation shall issue to any passenger a transfer ticket.

   [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 12.*]

5. CARRIERS (§ 12*)—CHARGES—LOCAL PASSENGER RATES.
   Railroad Law (Laws 1890, c. 565) § 105, which applies to corporations owning and operating a route and contracting with another such corporation for the use of their respective roads, and which provides that every such corporation shall, upon demand and without extra charge, give to each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point on the roads embraced in such contract, does not apply to the city of Buffalo, in which the Milburn agreement, effective by Laws 1892, c. 151, prescribing that a passen-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ger is entitled to a continuous trip over the most direct route within the city of Buffalo for the single fare of five cents, is effective.]

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 12.*]

6. CARRIERS (§ 248*)—CARRIERS OF PASSENGERS—RULES OF CARRIER.

A street railroad may make such reasonable rules and regulations for the carriage of its passengers and the operation of its cars as are necessary in the conduct of its business.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 248.*]

7. CARRIERS (§ 20*)—PASSENGER RATES—STATUTORY PROVISIONS.

Railroad Law (Laws 1890, c. 565) § 101, provides that a street railroad corporation shall not charge any passenger more than five cents for a continuous ride from any point on its road or a branch under its control to any other point thereon within the limits of any incorporated city, and section 39 imposes a penalty for a charge of more than the lawful rate; the Milburn agreement, entered into between the city of Buffalo and several named street railroads, effective by Laws 1892, c. 151, prescribes that a passenger is entitled to a continuous trip over the most direct route within the city of Buffalo for a single fare of five cents. Held, that the lawful rate of fare for a continuous trip over the most direct route within the city of Buffalo is that prescribed by the Milburn agreement, and that, in so far as the agreement fixes such fare, it is a substitute for the rate fixed by section 101, and that for a violation of the rate, as fixed by the agreement, a company is subject to the penalty prescribed by section 39.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

8. CARRIERS (§ 20*)—PENALTIES FOR VIOLATION OF REGULATION—PLEADING.

Where it is the duty of a street railroad operated in the city of Buffalo to carry a passenger between two points within the city over a direct route for the single fare of five cents, the allegations of a complaint, treated as true on an appeal from an order denying defendant's motion to dismiss the complaint before trial, that defendant, a street railroad company, had received plaintiff's fare of five cents and given him a transfer to his destination line, and that, after a delay caused by defendant, the plaintiff, proceeding over the most direct route, boarded another car upon another car line, where his transfer was accepted, but a further transfer to his destination line was refused, and he was required to pay an additional fare of five cents, states a good cause of action

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

Appeal from City Court of Buffalo.

Action by Charles J. Bingemann against the International Railway Company. From an order made in the City Court of Buffalo, denying defendant's motion to dismiss the complaint, defendant appeals. Affirmed.

Norton, Penney, Spring & Moore, for appellant.
Harrison & Smith, for respondent.

POOLEY, J. This is an appeal from an order made in the City Court of Buffalo, denying the defendant's motion at the opening of trial to dismiss the plaintiff's complaint herein, and render judgment for the defendant on the pleadings.

We fail to find any statutory authority for such practice in the City Court, nor any statutory right of appeal to this court from such an order made in the City Court, because this is not a judgment of the City Court, nor a final order, nor an order affecting a substantial

right, as prescribed by section 55 of the City Court act (Laws 1909, c. 570). If we are to follow the long-established rule in cases laid down in our courts of record, we will be required to find that such an order is not appealable, but that the better practice is to take an exception to the ruling of the court, and proceed with the trial. Dickson v. Knapp, 17 App. Div. 36, 44 N. Y. Supp. 636; Citron v. Bayley, 36 App. Div. 130, 55 N. Y. Supp. 382; Robinson v. Chinese, etc., 42 App. Div. 65, 58 N. Y. Supp. 885; Jones v. Sabin, 122 App. Div. 666, 107 N. Y. Supp. 508.

[1] The question, however, of the appellant's right to appeal from the order herein, has not been raised by the respondent, although the right to appeal to this court upon such an order is questionable, and we will not assume to determine that practice here.

The question herewith presented is of extreme importance, and the parties hereto are entitled to have the question involved determined upon the merits. For the purposes of this appeal, the sufficiency of the plaintiff's complaint is the matter involved, and will be treated, therefore, in the same manner as if a demurrer had been interposed to the complaint upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The action is brought to recover a penalty for the collection of an excess fare, together with the amount of such excess fare, pursuant to the provisions of section 39 of the railroad law (Laws 1890, c. 565). The complaint contains allegations showing that the defendant is a street surface railroad corporation, operating an electric street railroad in various streets in the city of Buffalo, N. Y., for the purpose of carrying passengers for hire; that, under the laws of the state, the franchise of the defendant, and the so-called "Milburn Agreement," the defendant is under legal obligation to carry passengers for the uniform fare of five cents on a continuous trip over the most direct route between any two points within the city of Buffalo, and for such purpose to accept passengers transferring from one car line of the defendant to the other, or from the car line of the defendant to the lines of other surface railways in the city of Buffalo, without exacting any further fare; that on or about the 15th day of February the plaintiff boarded one of the defendant's cars, and paid the uniform fare of five cents, and at the time requested of the defendant a transfer to the required destination line, which transfer was duly issued to the plaintiff; that the progress of the plaintiff was delayed in the continuation of the trip by the defendant, and not by the plaintiff, and that the plaintiff proceeded over the most direct route to his point of destination, which required plaintiff to board another car upon another car line where his transfer was tendered and accepted, but upon which his request for a further transfer to his destination line was refused; that, in order for the plaintiff to reach his destination upon the third car line, he was required by reason of the refusal to issue a further transfer to pay to the conductor of the defendant an additional fare of five cents; that, by reason of the refusal to issue to the plaintiff a further transfer, the plaintiff was compelled to "pay the additional and unlawful fare of

five cents," and that by reason thereof the defendant, "pursuant to the statutes of the state of New York (section 39 of the Laws of the state of New York), incurred the penalty of $50, to be paid to this plaintiff, for receiving more than the lawful rate of fare."

[2] For the purposes of this appeal, all of the allegations of the complaint must be regarded as true, regardless of whatever issues might be raised or what might be presented as a matter of proof at the trial by either party hereto. Sheridan v. Jackson, 72 N. Y. 170; De Wolf v. Ford, 193 N. Y. 397, 86 N. E. 527, 21 L. R. A. (N. S.) 860, 127 Am. St. Rep. 969; Kley v. Healy, 127 N. Y. 555, 28 N. E. 593.

Our attention is directed, therefore, to the following provisions of law:

(a) Section 101 of the railroad law, which prescribes that a street railroad corporation "shall not charge any passenger more than five cents for one continuous ride from any point on its road, or any road, line or branch operated by it or under its control, to any other point thereon or any connecting branch thereof, within the city limits of any incorporated city or village."

(b) Section 105, requiring "every such corporation (under section 78) shall upon demand and without extra charge give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in said contract, to the end that public convenience may be promoted by the operation of railroads embraced in such contract substantially as a single railroad at a single rate of fare."

(c) Section 39, which provides a penalty for an excessive fare.

(d) The so-called "Milburn Agreement."

It is stated in appellant's brief that it is conceded that there has been no violation by the appellant of section 101 of the railroad law. We find in the record no such concession, and in fact it is expressly negatived in the brief of the respondent.

[3] Section 101 of the railroad law entitles the passenger to one continuous trip over the most direct route of the railroad or any line or branch operated by it or under its control within the city limits for five cents, and must be read in conjunction with section 39 of the railroad law, which provides that, if any railroad corporation shall ask or receive more than the lawful rate of fare, such company shall be subjected to the penalty of $50. Bull v. N. Y. City Ry. Co., 192 N. Y. 361, 85 N. E. 385, 19 L. R. A. (N. S.) 778. It further provides that the Legislature expressly reserves the right to regulate and reduce the rate of fare on any railroad constructed and operated wholly or in part under such chapter, or under the provisions of this article.

[4] Section 101 does not, as we view it, require that any railroad corporation shall issue to any passenger a transfer ticket. The essence of the charge is not that of refusing a transfer ticket, but for compelling payment of excess fare. The passenger is not much concerned with the methods adopted by the defendant, but he is concerned in his transportation for an agreed price. He would be content with any arrangement resulting in his reaching his destination by a contin-

uous carriage by the available route. The transfer ticket is a suitable device adopted by the carrier, and identifies the holder as entitled to ride without further charge. It is quite as much for the benefit of the carrier as the passenger, and its use has been approved by the Legislature.

[5] Section 105 provides that, upon demand, such corporation shall without extra charge issue to the passenger a transfer to connecting lines or branches. This section applies to railroad corporations mentioned in section 78, namely, one owning and operating a route and contracting with another such corporation for the use of their respective roads or routes or parts thereof; while section 101 applies to all street surface railroads operating within the limits of any incorporated city or village. Hence section 101 applies to all, while section 105 may or may not be applicable in a given locality. Under section 105, several distinct systems might exist, as in New York City, where a passenger for one fare would be entitled to a continuous ride over a given system, but would not be entitled to a transfer to another system or to ride upon it without paying an additional fare. Section 105, therefore, in view of the situation presented in this case, is not applicable to the defendant, but is important as indicating the purpose of providing a comprehensive transfer system. Counsel for the appellant has urged at great length the intent of the Legislature in passing these various acts with reference to the application of the penalty. It seems clear that the Legislature intended to fix a regular or lawful uniform fate of fare for one continuous trip over the most direct route, to be charged by a given street surface railroad corporation within the limits of the city, that there was no intention to interfere with the pre-existing penalty for a charge in excess of such rates, and, in view of certain operating agreements, leases, and contracts of street surface railroads, that the passenger should be entitled to carriage for the same single fare over such lines by means of a transfer, and the Legislature has sought to establish such rates and such transfer arrangement. To adopt the contention of the defendant, we must assume that the Legislature by ratifying the Milburn agreement intended to relieve the Buffalo companies of liability to penalty, while enforcing it against all others. The Legislature in framing the statutes under discussion were formulating a system by which passengers could be carried on different lines for a given fare by means of a system of transfers, and, by section 105, providing a penalty for "every refusal to comply with the requirements of this section." As we read it, the penalty provided under section 105 is entirely independent of the penalty under section 39, but, as section 105 is not controlling here, it need not be further discussed. The defendant is either operating under the Milburn agreement, or under section 101; and in either case is subject to section 39.

The sole question here, therefore, is what is the legal or lawful rate within the limits of the city of Buffalo, and to what extent is a passenger entitled to ask and receive transfers for a continuous trip.

[6] The appellant is permitted to make such reasonable rules and regulations in the carriage of its passengers and in the operation of its

cars as are necessary in the conduct of its business, and, under the decisions of our state where such rules and regulations have been found reasonable, the traveling public is required to conform to them. Kelly v. N. Y. City Ry. Co., 192 N. Y. 97, 84 N. E. 569, Ketchum v. N. Y. City Ry. Co., 118 App. Div. 248, 103 N. Y. Supp. 486; Crandall v. Int. R. R. Co., 133 App. Div. 857, 117 N. Y. Supp. 1055.

It is urged by the appellant that, as to the city of Buffalo, sections 101 and 105 of the railroad law do not apply, in view of the fact that within the city of Buffalo the appellant is operating its cars under the Milburn agreement, which prescribes that a passenger is entitled to a continuous trip over the most direct route within the city of Buffalo for the single fare of five cents, and we find further in the agreement the following quotation:

"The intention of the parties is that all transfers, charges and double fares on continuous trips so defined shall be abolished, to the end that there may be a uniform five-cent fare for a continuous trip to any point over the most direct route over the entire portion of the entire railroad system owned by the three companies."

The Milburn agreement was entered into by the city of Buffalo, the Buffalo Street Railway Company, the Crosstown Street Railway Company, the West Side Railway Company, and was ratified by an act of the Legislature (chapter 151, Laws 1892), since which time the said act has been effective within the city of Buffalo. It must be assumed under the allegations of the complaint that the defendant is the successor of the companies named, at least to the extent of the route involved here. Other portions of the said agreement abolishing certain taxes paid by the various railroad companies to the city of Buffalo were included, but are not important in this connection.

It is urged, in view of the fact that the defendant here is operating under such an agreement, that it is not therefore subjected to the penalties prescribed for a violation of either section 101 or section 105 of the railroad law, but that the remedy of an aggrieved passenger is to sue for breach of contract and prove such damage as he has sustained.

[7] After careful consideration and examination of many cases which have been decided with respect to these questions, we conclude that the lawful rate of fare for a continuous trip over the most direct route within the city of Buffalo is that prescribed by the Milburn agreement, and that, in so far as the Milburn agreement undertakes and does fix such fare, it is a substitute for the lawful uniform rate fixed by section 101 of the railroad law of the state of New York, and that for a violation of such rate as is fixed by the Milburn agreement the appellant here is subject to the same penalty as is prescribed for violation of section 101 of the railroad law. If we were to accept the contention of the appellant in this connection, we would find that the Legislature of the state of New York, without any apparent intention so to do, has excepted the appellant from the provisions of any uniform rate of fare to be charged within the city of Buffalo, and has given to the appellant the right without any apparent intention to

fix for itself such fare as to it should seem proper within the city of Buffalo, without being subjected to any penalty for excessive fares or overcharges, leaving the aggrieved passenger to his remedy by action to recover the excess, and such damage as he could prove. It is true that the city of Buffalo might claim to rescind the agreement for a violation of its terms; but we are dealing with the rights of passengers, individuals who may or may not be citizens of Buffalo. We cannot agree that the Legislature ever intended to make this exception, nor do we find anything which tends toward such a conclusion.

We are supported in this view by the case of Crandall v. International Railway Co., 133 App. Div. 857, 117 N. Y. Supp. 1055, where the court said:

"Under the so-called Milburn agreement, a passenger upon the street railways of the city of Buffalo is entitled to a continuous trip between any two points by the most direct route for the single fare of five cents."

And also in the case of McCarthy v. International Railway Co., 126 App. Div. 182, at page 183, 110 N. Y. Supp. 936, at page 937, where the court said:

"The plaintiff was entitled to ride upon the second line upon a proper transfer so as to pay but one fare upon both lines. This was an overcharge, the second fare, by reason of the transfer being improperly punched by the first conductor."

Both of these decisions seem to recognize the right of the plaintiff to ride upon the second line, and both hold that the plaintiff was overcharged, which in its particular effect places upon the street railway company a duty and obligation to carry a passenger for the single fare on a continuous trip over the most direct route between any two points in the city of Buffalo, even though such carriage requires the issuance of a transfer.

[8] If, as it appears, therefore, it is the duty of the appellant under the statutes of the state of New York and the so-called Milburn agreement to carry the respondent upon its lines between two points in the city of Buffalo on a continuous trip over the most direct route for the single fare of five cents, the cause of action alleged in the respondent's complaint must be regarded as good and sufficient for the purposes of this motion, although a different result might be reached after trial on the merits.

For the reasons stated, therefore, the order of the City Court of Buffalo is affirmed, with costs to the respondent, and the case will proceed to trial in the City Court of Buffalo.