BINGEMANN v. INTERNATIONAL RY. CO.

(Supreme Court, Equity Term, Erie County. June 6, 1912.)

1. CARRIERS (§ 269*)—CARRIAGE OF PASSENGERS—REGULATIONS—VALIDITY.

A street car passenger, who accepts a transfer subject to reasonable rules, must comply therewith, and in the absence of an emergency he may not take a line not specified in the transfer, but where such line is temporarily blockaded, the company must tender the fare back to the passenger or provide proper transfers for the next best available route, and the passenger, on arriving at the transfer point and learning of the blockade of the line called for in his transfer, need not wait indefinitely for transportation on that line, but he is entitled to transportation to destination by any reasonably available means open to the company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1060–1063; Dec. Dig. § 269.*]

2. CARRIERS (§ 20*)—PERFORMANCE OF OBLIGATIONS.

Where a street car passenger paid a single fare and obtained a transfer on a designated line, but after a delay at the transfer point, caused by a temporary blockade of such line, he proceeded by another route, and the conductor on a car thereon, authorized to issue emergency transfers, accepted his transfer, but refused to give another essential to complete the journey to the destination, and the passenger was required to pay a second fare, the company failed to perform its contract obligations and was liable to the statutory penalty, since the conductor, accepting the transfer instead of rejecting it as he might have done, was required to provide the passenger with a transfer good to the point of destination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 28, 31; Dec. Dig. § 20.*]

Appeal from City Court of Buffalo.

Action by Charles E. Bingemann against the International Railway Company. From a judgment of the City Court of Buffalo for plaintiff, defendant appeals. Affirmed.

See, also, 73 Misc. Rep. 458, 131 N. Y. Supp. 4.

Harrison & Smith, for plaintiff.

Norton, Penney, Spring & Moore and Preston M. Albro, for defendant.

POOLEY, J. Plaintiff boarded the Best street car and paid his fare, which entitled him to transportation from the initial point to destination, providing he conformed to the rules regulating transfers. The transfer point was corner of Main and Swan streets, and the destination line was the Niagara street line. He applied for and was given a Niagara transfer. He waited at Main and Swan streets con-

———————
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Index

siderably longer than required for the arrival of a Niagara street car, and was then informed unofficially that the Niagara street line was blocked.

It appears from defendant's evidence that plaintiff was correctly informed, and that the Niagara street line was in fact blocked at about the time in question. Not knowing when the Niagara street car would come, and knowing that he could go to his destination by another route, i. e., up Main street to Utica street, thence to Niagara street, and there being no representative of the defendant at the transfer point to instruct him, he boarded an East Utica car, which went up Main street to Utica street, tendered his Niagara transfer, which was accepted and rung up by the conductor, and then demanded a transfer good across town on the West Utica line and thence on Niagara street to destination. Although the conductor accepted the Niagara transfer, he refused to transfer plaintiff beyond the corner of Utica and Main streets, and he was obliged to pay an additional fare to reach his destination.

[1] The rules adopted by defendant and published in various ways, including the printing of them upon each transfer ticket, are reasonable, and passengers accepting transfers are bound to observe them. If Niagara street cars had not been blocked, and this plaintiff, either through his mistake or intention, boarded a car other than a car of the line designated, the defendant would have been justified in refusing to accept the transfer and demanding an additional fare. But here was an emergency. With the Niagara line blocked, and the contract in part performed, the plaintiff was compelled to await the raising of the blockade, or go by some other route to his destination. He waited a considerable time beyond the usual requirements. He was not obliged to wait indefinitely, and he was entitled to transportation to destination by any reasonably available means open to the defendant, because the contract requires defendant to carry the passenger to destination by the most direct route. The defendant itself has designated the most direct route, via Niagara street; but it operated another route, less direct but equally effective, except perhaps that it required a little additional distance and time. With the Niagara line blocked, defendant could not complete its contract according to its terms, and it should therefore have tendered the fare back to the plaintiff, or provided the next best available route. If it had had a representative at the transfer point to provide for the emergency, he would doubtless have given the plaintiff an emergency transfer which would have entitled him to travel to destination by the next best, and for the time being the "most direct," route.

[2] No representative of defendant being present at the transfer point to give directions or emergency transfers, the plaintiff acted in a way which to him seemed a proper solution of the difficulty, and boarded an East Utica car which he knew went up Main street to Utica street. He presented his Niagara street transfer which was not good on the East Utica car. It must be presumed that not only the plaintiff but the conductor knew that the transfer was not good, and that it would have been rejected but for the fact that the Niagara

line was blocked. This conductor was called upon either to reject the ticket, or accept it, and in so doing undertake to complete the contract which was temporarily interrupted. He chose the latter course, and hence was bound to carry it out by providing plaintiff with a transfer good to destination. It is no answer to say that he was not authorized to issue a transfer from his car to the West Utica line: First, because it was an emergency, and he could issue an emergency transfer; and, second, if he could not, then he should not have undertaken it.

The primary object of the contract was simply to carry the plaintiff to his destination. The details of defendant's system and regulations were matters of indifference to plaintiff so long as he was progressing towards home. The rule of the "most direct route" is in the interest of both parties, to complete the contract in the shortest time; but it is for the defendant primarily to select the route, and it may select one in the working out of its system which may, in fact, cover a greater distance but require less time than another, and still be within the rule.

The gist of the action is the undertaking on the part of the defendant to carry the plaintiff for five cents from one point on its lines to another, and the fact that, by reason of a temporary interruption of traffic, the defendant was unable to perform the service by the route it had itself selected, and the plaintiff was refused a transfer by the available route, and was therefore compelled to pay an additional fare to reach his destination.

The conductor on the West Utica car, to whom the second fare was paid, collected it without incident; the plaintiff doubtless knowing that if he boarded the car without a transfer he would be obliged to pay a fare. The difficulty arose through the acceptance of the Niagara transfer on the East Utica car, the defendant, by its conductor, thus undertaking to complete the contract by an alternative route, and then after accepting and ringing up the Niagara transfer, refusing to give him the necessary transfer to complete the trip. This plaintiff had no right to select this alternative route, and the conductor of the East Utica line would have been within his rights and those of the company in refusing to accept a Niagara transfer on his car. But he did accept it, and plaintiff's destination and the destination line could be reached by his route.

The proposition of the enforcement of reasonable rules is not involved here. It rather presents a condition that is not covered by any prescribed rule, and the parties are called upon to spell out a reasonable solution. There was no object in carrying this plaintiff out Main street and leaving him without transfer at the corner of Utica street. The conductor might better have refused his transfer in the first place, and left him at Main and Swan streets to await developments.

It has been held in this same case on a former appeal (73 Misc. Rep. 458, 131 N. Y. Supp. 4) that the penalty clause of the statute is applicable here, and I think plaintiff has made out his cause of action.

Judgment appealed from is affirmed, with costs.