In the Matter of the Application of ROSE LEVINE, Petitioner, a Citizen, for an Order against INTERBOROUGH RAPID TRANSIT COMPANY, Respondent, Pursuant to Sections 239, 240 and 241 of the Railroad Law.

City Court of New York, Bronx County, June 4, 1932.

*Solomon Hirschhorn*, for the petitioner.

*William M. Stout*, for the respondent.

DONNELLY, J. The petitioner alleges that on March 30, 1931, while attempting to board a car of one of the Interborough Rapid

Transit Company's trains running into Fourteenth street at Union Square, the door of the car suddenly closed and pinned her between the door and the side of the car, causing her to sustain injuries. She also alleges that the accident was due to the company's negligence in failing to provide a catch or spring in the door to prevent its swinging and obstructing passengers in their egress from or ingress to the car. On May 12, 1931, the petitioner, by the service of a summons and complaint, instituted an action against the company to recover damages for her alleged injuries.

The petitioner now moves for an order, pursuant to sections 239, 240 and 241 of the Railroad Law, directing the Interborough Rapid Transit Company to pay to the clerk of this court a sum not less than $250 nor more than $1,000, the penalty provided in section 241 of the Railroad Law for violation of the two preceding sections. By section 241 it is provided that whatever sum may be ordered to be paid for such violation shall be turned over by the clerk to the county treasurer, who shall distribute the sum directed to be paid equally among the public hospitals of the county in which the proceeding is had. By section 239 it is provided, in substance, that all trains upon *elevated railroads* shall come to a full stop before any passenger shall be permitted to leave such trains, and that such trains shall not start until every passenger desiring to board or enter shall have actually boarded or entered the cars. Section 240 reads: " Gates or vestibule doors. Every car used for passengers upon elevated railroads shall have gates at the outer edge of its platforms so constructed that they shall, when opened, be caught and held open by such catch or spring as will prevent their swinging and obstructing passengers in their egress from or ingress to such cars, or vestibule doors so constructed as to slide into the body of the car; and every such gate or door shall be kept closed while the car is in motion; and when the car has stopped and a gate or door has been opened, the car shall not start until such gate or door is again firmly closed."

There is no doubt that these sections of the Railroad Law apply as well to subway trains as to trains operated on elevated railroads in the city. Section 240 of the Railroad Law is derived from section 139 of the Railroad Law of 1890, which in turn was taken from section 1 of chapter 399 of the Laws of 1881. When originally enacted in 1881 the section did not contain the alternative method of door operation which is now found in section 240 of the Railroad Law. The words, " or vestibule doors so constructed as to slide into the body of the car," do not appear in the act enacted in 1881. They were added by chapter 273 of the Laws of 1903. In 1907

the first Public Service Commission Law was enacted, and under that law, as subsequently amended, complete jurisdiction was given to the Commission over the equipment used on the various railroads operating in the city of New York (Pub. Serv. Com. Law, § 49, subd. 2; § 50). The Public Service Commission may, on the application of any railroad corporation, authorize it to use any other safeguard or device approved by the Commission, in place of any safeguard or device hereinbefore required by this article, which shall thereafter be used in lieu thereof. (Railroad Law, § 75, as amd. by Laws of 1928, chap. 546.)

The company claims that there is on each of the doors of its cars a device which automatically holds the door open until such time as a button is pressed by the operator of the train so as to release the catch and cause the door to close, and that the present form of door construction is what is commonly known as the M. U. D. C., i. e., multiple unit door control, and that this device has been in use after a test by the engineers of the Public Service Commission and an order authorizing its installation by the Commission. Whatever the fact may be, there is nothing before me to dispute it, except the bare allegation of the petitioner that the door was not held open by the catch or spring directed to be provided by section 240 of the Railroad Law. Petitioner's counsel insists that, unless his client's mere assertion is contradicted by evidentiary facts, it must be presumed to be true. This is a rather novel proposition. It is tantamount to declaring that when a penal statute is invoked, the burden of showing that it has not been violated is cast upon the alleged offender by the mere charge of his accuser. "Presumably, the legislature, in enacting this section, had in mind the principle that, in the enforcement of a statute giving a penalty, if there be a reasonable doubt, the party, of whom the penalty is claimed, is to have the benefit of it." (*Goodspeed* v. *Ithaca Street Ry. Co.*, 184 N. Y. 351, 354; *McCarthy* v. *International Ry. Co.*, 126 App. Div. 182, 184.) In *Wysocki* v. *Erie Railroad Co.* (155 App. Div. 798, 800) it was said: "This is a penal statute. To recover under it, plaintiff has the burden of bringing the case clearly within its terms, and defendant is entitled to the benefit of any reasonable doubt of the application of the statute to the case as made." There is nothing in the petition to establish the petitioner's claim as a fact. She does not say that she examined the door, and that, as the result of such examination, she found it lacking in any catch or spring. The greater part of her petition is a recital of purely formal matters; her citizenship; the company's status as a domestic corporation and as the operator of the railroad in question; the date and the

location of the accident; citation of the sections of the Railroad Law upon which she relies; demand for the order sought. That part of her petition which deals with the cause of the accident is brief almost to the point of abruptness. A perusal of it leads irresistibly to the inference that her version of the cause of the accident is simply her own conclusion. I cannot agree with the suggestion of her counsel that, if the court deems it necessary, additional proof of the defendant's violation may be taken on sworn testimony. That the petitioner has such " additional proof " is not even suggested. As the statute in question is penal, the burden is upon the petitioner to bring her case clearly within its terms. (*Wysocki* v. *Erie Railroad Co., supra.*) The allegations of the petition are far from sufficient to establish the company's failure to comply with section 240 of the Railroad Law. Motion denied, with ten dollars costs.