## RAILWAY COMPANY *v.* HARDY.

Decided November 21, 1891.

1. *Railway regulation—Chair car—Extra charge.*
   Where a railway company furnishes sufficient first-class cars with the usual appliances, and upon the same train carries a chair car which furnishes extra service and accommodations, a regulation that persons traveling a distance less than one hundred miles shall pay twenty-five cents in addition to the maximum charge for first-class passage is reasonable, and not prohibited by the statute which limits the sum railways may collect for first-class passage. (Acts 1887, p. 227.)

2. *Removal of passenger—Damages.*
   Where a passenger in the chair car declined to pay the extra charge, he cannot recover damages because he was removed to the first-class passenger car if done without unnecessary force.

3. *Carrier—Advertising free chair car—Damages for ejection of passenger.*
   An advertisement by a railway company which states generally that free reclining chair cars will be run upon its road, and specially that such cars will be run to Fort Worth, does not warrant the inference that such cars were free to all passengers under all circumstances, or that they are free at all except to those taking passage to Fort Worth; nor, if such inference were warranted, could one removed from the chair car for refusing to pay the extra charge recover damages therefor without showing that he was misled to his damage.

APPEAL from *Ouachita* Circuit Court.

CHARLES W. SMITH, Judge.

Appellee brought suit against the St. Louis, Arkansas and Texas Railway Company, known as the "Cotton Belt Route," a line more than seventy-five miles in length, (1), to recover the penalty prescribed by the act of April 4, 1887, for charging him more than three cents per mile for transportation; and (2), to recover damages for a forcible and unlawful expulsion from appellant's chair car.

Appellee testified, in substance, that, on November 25, 1888, he bought a first-class ticket on appellant's railway from Camden to Stephens, a distance of twenty-one miles, for which he paid sixty-five cents. He entered a chair car, and took a seat in it. Upon taking up his ticket the conductor demanded twenty-five cents extra for the privilege of

riding in a chair car.   He refused to pay it.   The conductor
then took hold of him, pulled him up and put him in the
coach preceding the chair car.   There was no abusive lan-
guage used by the conductor, and no harsh treatment.   Ap-
pellee had been led to believe, from notices which he had
seen, that no extra charge would be or was made by appel-
lant for the privilege of riding in the chair car.   He had
ridden in the chair car in its trains before, when the extra
twenty-five cents had been demanded of him, but it was not
insisted on, and he never paid it.   He had ridden in the car
distances less than one hundred miles.

J. S. Holmes, publisher of a newspaper in Camden, testi-
fied that for some time prior to November 25, 1888, the rail-
way company had caused an advertisement to be inserted in
his paper, which was as follows:

" The new through line from Arkansas to the north and
east, *via* the Cotton Belt Route, commencing November 4,
1888, a new fast train, consisting of Pullman buffet sleepers,
free reclining chair cars, elegant day coaches, will be put
on between St. Louis and Arkansas, connecting in union
depot at St. Louis, with trains to all points north and east.
No change of cars to Cairo, Memphis or St. Louis.   The
shortest route via Memphis to all points in the southeast.
Shortest and most direct route to Texas.   Free reclining
chair cars to Fort Worth, connecting with trains to all points
west and northwest.   All the comforts and conveniences of
modern railway travel."   The advertisement was signed by
the company's passenger agent.

W. H. Crozier, the conductor who removed appellee from
the chair car, stated that the coach to which he was con-
ducted was a first-class passenger car, new, and well fitted
up for the accommodation of passengers.   That the rules
and regulations of the company required the conductor to
collect twenty-five cents, in addition to first-class fare, for
riding in the chair car, from travelers traveling a distance less
than one hundred miles ; passengers traveling on the trains
one hundred miles or more were to be permitted to ride in

said cars without paying the same. The chair cars were put in the trains, and the rules and regulations made, to attract travelers from competing lines of railway, especially those traveling into Texas, and as far or farther than one hundred miles. The company did not really desire to have the local passengers along the line ride in the chair cars, and the extra charge was made more for the purpose of keeping obnoxious persons out of the cars than for any other purpose. The chair car was furnished with reclining chairs, which could be so adjusted that passengers could sleep as comfortably in chairs as in regular sleeping cars. In addition to the service and accommodations furnished by railway companies in what is known as first-class coaches, the chair car was furnished with a wash-room at each end, one for ladies and one for gentlemen, also with water, soap and linen towels for washing purposes, and a porter, whose duty it was to give his entire time to the attention and accommodation of the passengers,—the cost of such additional service and accommodation being from $35 to $40 per month. The chair car had more equipments and accommodations than are usually furnished by railway companies in first-class passenger cars.

There was no conflict in the evidence. The company asked the court to instruct the jury that the regulation concerning the chair car was reasonable. The court refused to give the instruction, but left it to the jury to decide its reasonableness. The jury returned a verdict for the plaintiff, assessing his damages at $58, and the statutory penalty at $150, and judgment was rendered accordingly.

*Montgomery & Moore* and *Sam H. West* for appellant.

1. The reasonableness of the rules and regulations of a railroad in regard to running chair cars was a question of law for the court. Thompson on Carriers of Pass., 335. When the facts are undisputed, the question is a proper one for the court. 12 S. W. Rep., 874; 41 Am. Dec., 472 and note; 18 A. and E. Ry. Cases, 347; 43 Ill., 420.

2. The regulation is reasonable ; defendant had the right

to make such regulation. Thomps., Car. Pass., 335; 43 Am. Dec., 481, and note; 36 Wis., 450; 93 Am. Dec., 750, and note; 4 Am. St. Rep., 776; 17 Pac. Rep., 54; 2 Wood, Ry. Law. 1034–5; 33 A. and E. Ry. Cases, 496, and note; Mansf. Dig., sec. 5447, subd. 9.

3. Plaintiff's action was not brought in good faith; his purpose was to harass the defendants. 31 A. & E. Ry. Cases, 111; 54 Ark., 354.

4. A railroad company has to arrange its passengers in different coaches, the only requirement being that each passenger shall be furnished with the class of fare which the ticket calls for. A charge of 25 cents for extra accommodations is not unreasonable. 20 N. Y., 126; 55 Penn. St., 209; 70 N. Y., 587; 39 Wis., 636; 22 Barb. (N. Y.), 130; 18 Ill., 460.

*Bunn & Gaughan* for appellee.

While the question as to whether certain rules and regulations of a railroad company are in conformity to law is a question for the court, yet when the question of the legality of the rules and regulations and their reasonableness are inseparably connected, or so connected as not to be readily separated in our system of pleading and practice, the question is one of mixed law and fact, and may well be submitted to the jury under the eye of the court. 37 A. & E. Ry. Cases, 231. The reasonableness of regulations other than by-laws is a question for the jury. 24 N. J. L., 435; 7 Iowa, 204. The better opinion is that it is a mixed question of law and fact, and may be decided by the court, or left to the jury under instructions of the court. 1 Redfield on Railways, 95; Thompson on Carriers, 335; 5 Mich., 520; 36 Wis., 450; 4 Fed. Rep., 37.

HEMINGWAY, J. The payment of first-class passenger fare does not entitle one to demand carriage in a car equipped with adjustable reclining chairs and lavatory and served by a special porter. And where a railway company furnishes sufficient first-class cars with the usual appliances and ser-

1. Railway regulation— Chair car.

vice, for the accommodation of those entitled to first-class passage, and upon the same train carries a chair car which furnishes the extra service and accommodations above indicated, it may lawfully demand a reasonable extra compensation of passengers who from choice take passage in it, and this right is not denied or restricted by the statute which limits the sum railways may charge for " first-class passage." The facts being undisputed, it is the province of the court to declare the regulation reasonable. *Railway* v. *Adcock,* 52 Ark., 406.

2. Removal of passenger.    If a passenger declines to pay a proper extra charge for passage in a chair car, he should leave it and accept a seat in the first-class car ; if, upon request, he declines to do this, he cannot complain if he is conducted from the car in which he is not entitled to passage to one in which he is entitled to it, provided his removal is accompanied by no unnecessary or improper violence or force.

3. Advertisement of free chair car—Damages.    An advertisement by the railway in which it was stated generally that free reclining chair cars would be run upon its road, and specially that free reclining chair cars would be run to Fort Worth, does not warrant the inference that such cars were free to all passengers under all circumstances, or that they were free at all except to those taking passage to Fort Worth ; but if such inference could be drawn, it would not warrant a recovery except upon a showing that the plaintiff had been misled in that regard, and thereby sustained some loss—facts not appearing in this case.

As the instructions may be tested by the principles announced, we deem it unnecessary to consider them. There was no evidence to sustain a recovery for the statutory penalty, for the charge was not excessive ; there was none to sustain a recovery for damages, for the defendant did no wrong, and the plaintiff sustained no loss. The motion for a new trial should have been granted, and for the error in refusing it the judgment must be reversed.