testators. The husband's will is shown to have been executed according to the statutory requirements. The proof is silent as to the wife's will. Both, however, were executed at the same time, as a part of one occurrence. Proof is given as to the handwriting of the deceased wife on her will and the signatures of the subscribing witnesses thereto. The question arises: Are the facts thus shown, sufficient to authorize an inference of fact that both wills, executed at the same time and under the same direction, were executed in the same manner? If so, then a prima facie case was made out.

This is so, whether the facts proved give rise to an "artificial presumption," commonly known as a "presumption of law," or to a "natural presumption," commonly known as a "presumption of facts." As Mr. Starkie, in his classic work on Evidence, says (page 751):

"Mere natural presumptions are derived wholly by means of the common experience of mankind, from the course of nature and the ordinary habits of society. Such presumptions are, therefore, wholly independent of the system of laws to be applied to the facts when established; they remain the same in their nature and operation, whether the law of England, or the Code of Justinian, is to decide upon the legal effect and quality of the facts when found."

The same author remarks:

"It would be a vain endeavor to attempt to specify the numerous presumptions with which the knowledge of a jury conversant in the common affairs and course of dealing in society necessarily supplies them. It is obvious that such presumptions are coextensive with the common experience and observation of mankind"—quoted from Thayer's Preliminary Treatise on Evidence, pp. 549, 550.

To my mind, at least, it appears clear that on the facts proved before the surrogate a prima facie case was made, which on the trial of an action would have required the submission of the question of due execution of this instrument to the jury.

As to the determination by the surrogate of the facts of execution and his decree admitting this will to probate, this court should not now interfere. The inference of fact drawn by the surrogate was the natural one under the circumstances, and such as most men would draw under similar conditions.

The decree of the Surrogate's Court should be affirmed, with costs. All concur.

---

MULLIN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. March 4, 1910.)

1. CARRIERS (§ 248*)—TICKETS—REGULATIONS.

A rule of a carrier, requiring an uncanceled ticket as evidence of purchased transportation, is reasonable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 994; Dec. Dig. § 248.*]

2. CARRIERS (§ 356*)—EJECTION—CANCELED TICKETS.

A passenger cannot recover for an ejection when, holding a round-trip excursion ticket, and knowing that the conductor of the outgoing train had canceled the return coupon, he presents such coupon for a return passage,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the conductor, in obedience to the rule of the company, ejects him on his refusal to pay fare.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1423; Dec. Dig. § 356.*]

Appeal from Municipal Court, Borough of Queens, First District.

Action by Susan Mullin against the Long Island Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before HIRSCHBERG, P. J., and WOODWARD, THOMAS, RICH, and CARR, JJ.

Dominic B. Griffin, for appellant.
Gordon Ireland, for respondent.

THOMAS, J. The plaintiff had purchased for herself and her sister two excursion tickets. The outgoing conductor by mistake punched, and thereby apparently canceled, the return tickets. The holders thereof attempted their return on a train in charge of another conductor, and, upon tendering only the canceled tickets as evidence of the right to ride, were told that in default of paying the fare they must leave the train, which they did at an intermediate station, where they were detained for a short time, and resumed their journey on another train. .

The rule requiring an uncanceled ticket as evidence of purchased transportation is reasonable. It was the duty of the conductor to enforce this rule. The plaintiff knew that the wrong tickets had been canceled. The wrong done to her was by the conductor of the first train. He, acting for the company, had so mutilated as to destroy evidence of her right to return in a later train. Yet she presents and demands recognition of the ticket, knowing that the conductor had no power to accept her statement, and, by condoning what another erroneously had done, rehabilitate her ticket. One citation is sufficient. Monnier v. N. Y. C. & H. R. R. R. Co., 175 N. Y. 281, 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. Rep. 619; but also may be considered Wiggins v. King, 91 Hun, 340, 36 N. Y. Supp. 768, and Townsend v. N. Y. Cen. & H. River R. R. Co., 56 N. Y. 295, 15 Am. Rep. 419.

The judgment should be reversed, and a new trial ordered; costs to abide the event. All concur.

---

MULLIN v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. March 4, 1910.)

Argued before HIRSCHBERG, P. J., and WOODWARD, THOMAS, RICH, and CARR, JJ.

Dominic B. Griffin, for appellant.
Gordon Ireland, for respondent.

