filed (nearly a month after the abandonment of the work), and that plaintiff was still continuing to perform it.

If the contract remained in force after September 1, 1906, and plaintiff was still working under it, he cannot recover upon the cause of action stated in his complaint. If he rescinded the contract in August, 1906, so as to be entitled to sue upon a quantum meruit, his notice of lien falsely stated the particulars of his claim, and grossly magnified its amount. In face of such an inconsistency the judgment, in so far as it forecloses the lien, cannot be sustained. The court has found sufficient facts to sustain a personal judgment against the defendant Ryan; but, in view of our doubts as to the sufficiency of plaintiff's reason for quitting the work, we are of opinion that the ends of justice will be best served by reversing the judgment in toto.

Judgment reversed, and new trial granted, with costs to the appellants to abide the event. All concur.

---

ELDER v. INTERNATIONAL RY. CO.

(Supreme Court, Special Term, Erie County. May 3, 1910.)

1. CARRIERS (§ 250*)—REGULATIONS—VALIDITY.

A general rule of a street railroad requiring passengers to deposit the fares in a box on entering the car, and forbidding conductors from handling fares, is a reasonable one, and while exceptional circumstances may arise which will make the strict enforcement of the rule vexatious, the railroad need not provide for all the possible exceptions, justifying a suspension of the rule.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1003; Dec. Dig. § 250.*]

2. CARRIERS (§ 356*)—EJECTION OF PASSENGERS.

A conductor of a car operated under a rule requiring passengers to pay as they enter by depositing fares in a box on the rear platform, and forbidding conductors from handling fares, who receives a transfer from a passenger, has a reasonable time to examine it, and where he soon discovers that the transfer is wrong, and then notifies the passenger and demands fare, the passenger must pay fare and comply with the rule by depositing it in the box, and where he refuses to do so the conductor may eject him, without using violence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1409, 1410, 1423–1432; Dec. Dig. § 356.*]

Appeal from Municipal Court of Buffalo.

Action by Frank S. Elder against the International Railway Company. From a judgment of the City Court of Buffalo in favor of plaintiff, defendant appeals. Reversed.

Preston Albro, for appellant.
Vernon M. Cole, for respondent.

WHEELER, J. The plaintiff boarded a street car on defendant's line at the foot of Main street, in the city of Buffalo. He intended transferring from the Main Street car to an Elmwood Avenue car of the defendant company. It seems that the point for transferring such

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

passengers, as established by the rules of the defendant, is at the junction of Exchange and Main streets, where the Elmwood Avenue car turns into Main street. Owing, however, to the crowded condition of the Main Street car, the conductor did not take the fare of the plaintiff until after the car had passed Exchange street. The plaintiff, however, paid his fare, and the conductor gave him a transfer ticket, and on reaching Shelton Square, 3½ blocks further up Main street, boarded an Elmwood Avenue car. This was what is known as a "pay as you enter" car. He handed the conductor his transfer, entered the car, and took a seat. Shortly after, the conductor entered the car and told the plaintiff he could not accept the transfer, as he should have boarded the car at Exchange street. Some argument followed, in which the conductor adhered to his position and told the plaintiff he would have to pay a fare. The plaintiff thereupon offered to pay the fare, but the conductor stated to him that he would have to go back to the platform and deposit the nickel in the fare box, because the rules of the company forbade him from handling the fare. The plaintiff evidently felt incensed at this, but, while willing to pay an additional fare, refused to walk back and put it into the box. Whereupon the conductor, without violence, put the plaintiff off the car. The plaintiff brought this action in the City Court, alleging an unlawful assault. The court below rendered a judgment in his favor for $50 and costs. Thereupon the defendant appealed therefrom to this court.

The question is whether the act of the conductor of the Elmwood Avenue street car was lawful, under the circumstances. It is not questioned the plaintiff was lawfully entitled to a transfer to the Elmwood car; but it is contended by the appellant that the conductor of the Elmwood car was justified, under the rules, in refusing to accept the transfer tendered, and that the rule requiring the defendant to deposit the fare in the box on the rear platform, and forbidding conductors to handle the fares, is a reasonable one, which the plaintiff should have respected and obeyed; that, if the conductor failed to give him the transfer to which he was entitled, the plaintiff's remedy was to pay the additional fare asked, and bring his action for the failure to furnish a proper transfer, and not to force the conductor of the Elmwood car to eject him, and then bring an action for assault. The defendant relies on the case of Monnier v. N. Y. Central & Hudson River R. R. Co., 175 N. Y. 281, 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. Rep. 619, holding that a passenger is bound to obey the reasonable rules of a railroad company, and should not put up forcible resistance to their enforcement, but, if wronged by neglect of the carrier to enable him to procure the necessary transportation ticket, should, nevertheless, seek other redress than forcing a conductor to eject him.

If the plaintiff had refused to pay any extra fare, the Monnier Case would clearly have applied. He did offer to pay the fare asked, but refused to return to the rear platform to personally deposit it in the fare box. If it was a reasonable regulation on the part of the railway company to forbid its conductors to receive fares, and to require passengers to deposit the fare in the box, then the plaintiff should have paid his fare, and paid it in the manner prescribed by the rule. The

"pay as you enter" system of collecting street car fares has been adopted in part for the purpose of guarding against the possible dishonesty of conductors in collecting and not turning in to the company all the money received. If we can trust the common reports, the system has proved a success in increasing the returns to the company. Manifestly a general rule, requiring passengers on entering a car to deposit fares in the box themselves, is a reasonable one. Exceptional circumstances may arise which would make the strict enforcement of the rule vexatious in particular cases. We hardly think it, however, incumbent on the railway company to anticipate or provide for all the possible exceptions which would justify a suspension of the general rule. It has been held, in the case of Montgomery v. Buffalo Railway Company, 165 N. Y. 139, 58 N. E. 770, that particular circumstances are not sufficient to excuse for a noncompliance with a reasonable rule, but that the passenger is bound to submit to it, and the duty of the conductor to enforce it.

When the plaintiff gave his transfer to the conductor of the Elmwood car, the conductor had the right to suppose the transfer tendered entitled the plaintiff to continue his trip on the car he boarded. The conductor had a reasonable time to examine the transfer. I do not think the failure of the conductor to discover the transfer was wrong at the moment he received it bound him to accept. He had a reasonable time to inspect it, and it appears that very shortly after he called the passenger's attention to the fact that the transfer was wrong, and that he would not honor it. It then became the passenger's duty to pay his fare, and to comply with the reasonable rule of the company as to its mode of payment. As was said in Nicholson v. Brooklyn Heights R. R. Co., 118 App. Div. 14, 103 N. Y. Supp. 311:

"Passengers must know that conductors cannot dispense with the rules of the company, and if they do not the law charges them with such knowledge."

In this particular case we do not wonder the plaintiff felt vexed. It was most natural and annoying, viewing the train of circumstances leading up to the argument and disagreement over the matter. If the court had been the conductor, probably he would have taken the chances of discipline for ignoring the rule; but as matter of law we cannot hold the conductor was bound to ignore the rule, or to hold him or the railway company liable for its enforcement.

We therefore conclude the judgment must be reversed; but, in view of the circumstances of the case, it is reversed without costs.