## JOSEPH MARTIN *vs.* THE RHODE ISLAND COMPANY.

### JANUARY 13, 1911.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Street Railways. Automatic Fare Register. Reasonable Regulations.*

A rule of a street railway company requiring the payment of fare by its passengers by means of an automatic fare registering device held in the hand of the conductor, wherein the passenger inserts a nickel, is a reasonable regulation justifying the ejectment of a passenger who, having notice of such regulation, fails to observe it, no undue force being used.

The ejectment of a passenger, without undue force, is also justified under such regulation, where such passenger, having notice thereof, tenders five pennies in payment of fare, and refuses to receive in exchange therefor a nickel, and to insert said nickel into the automatic fare register, the passenger being notified when he tendered the pennies that they would be received by the conductor only for the purpose of providing the passenger with a nickel; it being closely analogous to the regulation requiring the purchase of a ticket by a passenger.

(2) *Reasonableness of Rule Question for Court.*

The question of the reasonableness or unreasonableness of a regulation made by a carrier for its protection in the collection of its lawful charges, is one to be determined by the court, and is not to be submitted to the jury.

(3) *Legal Tender. Reasonable Regulations.*

*Semble:* The refusal to take the five separate cent pieces under the above conditions is not a violation of the legal tender statute (vol. 2, U. S. Comp. Stat. 1901, § 3587), which provides that "the minor coins of the United States shall be a legal tender at their nominal value for any amount not exceeding twenty-five cents in any one payment," and the regulation as applied to such facts is not unreasonable as a violation of such statutory right.

(4) *Maximum Fare. Mode of Payment.*

The establishment by law of a maximum rate of fare does not abrogate the power of the carrier to make reasonable regulations as to the mode of payment.

TRESPASS ON THE CASE. Certified to the Supreme Court, under Gen. Laws, cap. 298, § 5.

PARKHURST, J. This case comes before the court for hearing upon questions of law of such doubt and importance and so affecting the merits of the case that, in the opinion of the Superior Court, they should be determined by the Supreme Court before further proceedings, and are certified in accordance with the provisions of chapter 298, section 5, of the General Laws of Rhode Island, 1909.

The action is trespass on the case, brought by Joseph Martin against The Rhode Island Company, for damages resulting from

being ejected from the defendant's cars. The declaration is in four counts.

The first count sets out in general terms that the plaintiff boarded the defendant's car and tendered the conductor in charge of the car a nickel in payment of his fare; that the conductor declined to accept said nickel, stopped the car, and wrongfully ejected the plaintiff therefrom.

The second count covers the same ejectment, but sets out with greater detail that the plaintiff boarded a certain car belonging to the defendant, and tendered the conductor in charge of the car a nickel in payment of his fare; that the conductor requested the plaintiff to insert said nickel into an automatic fare-registering device held in the conductor's hand; that the plaintiff declined to accede to the request of the conductor, whereupon the conductor stopped the car and wrongfully ejected the plaintiff therefrom.

The third count covers an ejectment on a different day, and sets out in general terms that the plaintiff boarded the defendant's car and tendered the conductor in charge of the car five pennies, in payment of his fare; that the conductor declined to accept said five pennies, stopped the car and wrongfully ejected the plaintiff therefrom.

The fourth count covers the same ejectment as the third, but sets out in detail that the plaintiff boarded a certain car belonging to the defendant and tendered the conductor in charge of the car five pennies, in payment of his fare; that the conductor took said pennies, tendered a nickel to the plaintiff and requested him to insert said nickel into an automatic fare-registering device held in the conductor's hand; that the plaintiff declined to accept said nickel and insert it into the automatic fare-registering device, whereupon the conductor stopped the car and wrongfully ejected the plaintiff therefrom.

The defendant filed a plea of the general issue to each of the four counts of the declaration, and a special plea to each of the four counts. The special pleas to the first and second counts of the declaration are practically identical, and set up in substance that when the plaintiff entered the defendant's car he

failed to comply with the reasonable regulations of the defendant, known to the plaintiff, governing the manner of the payment of fares, and refused to insert his nickel into the automatic collector held in the hand of the conductor, although requested to do so by the conductor; that said plaintiff was informed by the conductor that in accordance with the regulations of the defendant he would have to insert his nickel into said automatic collector, or he would have to leave the car; that upon the continued refusal of the plaintiff to insert his nickel into the automatic collector, the car was stopped and the plaintiff ejected, using no more force than was necessary.

The special pleas to the third and fourth counts of the declaration are practically identical, and set up in substance that when the plaintiff entered the defendant's car and tendered to the conductor five pennies in payment of his fare, the conductor received said pennies for the sole purpose of providing the plaintiff with a nickel which the plaintiff might insert into the automatic collector, in accordance with the reasonable regulations of the defendant; that the conductor informed said plaintiff of the purpose for which said pennies were received, and tendered him a nickel and requested him to insert it into the automatic collector held in the hand of the conductor, in accordance with the regulations of the defendant; that the plaintiff refused to accept said nickel and insert it into the said automatic collector; that thereupon the conductor informed the plaintiff that he must either receive said nickel and insert it into said automatic collector, in accordance with the defendant's regulations, or leave the car; that upon the continued refusal of the plaintiff to accept said nickel and insert it into said automatic collector, the car was stopped and the plaintiff ejected, using no more force than was necessary.

The plaintiff demurred to each of the special pleas upon the following grounds:

1.   That said pleas contain no allegations which constitute a defence to this action.

2.   That while said pleas purport to be pleas in confession and avoidance, said pleas confess the commission of the griev-

ances complained of but do not set forth sufficient matter in justification.

3.   That the regulations of said defendant set forth in said pleas are not reasonable regulations and therefore not a justification of the defendant's conduct complained of in the plaintiff's declaration.

The questions of law certified by the Superior Court to be determined by the Supreme Court are as follows:

(1)   1.   Is a rule of a street railway company requiring the payment of fare by its passengers by means of an automatic fare-registering device, held in the hand of the conductor, consisting of a small nickel-plated box having a coin-slot on one side through which the passenger inserts a nickel, a reasonable rule or regulation, justifying the ejectment of a passenger by the conductor in charge of the car should the passenger, having notice of such rule or regulation, fail to observe said rule, no undue force being used?

2.   Is a rule of a street railway company requiring the payment of fare by its passengers by means of an automatic fare-registering device, held in the hand of the conductor, consisting of a small nickel-plated box having a coin-slot on one side, through which the passenger inserts a nickel, a reasonable rule or regulation, justifying the ejectment of a passenger by the conductor in charge of the car, no undue force being used, who, having notice of such rule or regulation, tenders five pennies in payment of his fare, and who refuses to receive in exchange therefor a nickel, and to insert said nickel into the automatic fare-registering device, the passenger being notified at the time said pennies are tendered that they will be received by the conductor only for the purpose of providing said passenger with a nickel?

We understand the word "nickel," used in the first question, to mean the five-cent piece now and long since in common use in the United States, made partly of nickel, and colloquially called a "nickel;" and the word "pennies," used in the second question, to mean the single separate one-cent pieces now in common use; strictly speaking, we know of no coin now in use

in the United States which is properly called a "penny" (See vol. 2, U. S. Comp. Stat. § 3515).

The incidental power of a common carrier to establish reasonable rules regulating the time, place, and mode for payment of its reasonable charges is unquestioned on the plaintiff's brief, and is amply sustained by the authorities. 28 Am. & Eng. Enc. of Law, 166; *Reese* v. *Pennsylvania R. R.* 131 Pa. St. 422 (1890), 19 N. E. 72. 1 Elliott, Railroads, vol. 1, § 199: "A railroad company has an implied authority (which is necessarily almost absolute) to make and enforce all reasonable rules and regulations for the control of its trains and the persons thereon, of persons using its stations and grounds, and of those transacting business with it, in order to provide for the safety of its passengers and employees, and to protect itself from imposition and wrong."

The power to make such regulations is essential to the maintenance of the undoubted right of the carrier to secure to itself, in return for services rendered, the compensation prescribed by law, and is in aid of a right as absolute in the carrier as is the right of the passenger himself to demand transportation. And the courts have repeatedly held that regulations of this character may, and should be, sustained upon the sole ground that they or similar rules are reasonably necessary to protect the carrier in the collection of his lawful charges, even though the rule manifestly results in additional hardship to the passenger but not interfering with his primary right to transportation. Thus in the leading case of *Hibbard* v. *N. Y. & Erie R. R. Co.*, 15 N. Y. 455 (1857), it was held that a railroad company had a right to compel passengers to exhibit their tickets to the conductor as often as requested, because (p. 458) "this or some similar arrangement is absolutely necessary for the company, unless they are willing to transport passengers free." And see other cases cited *infra.*

(2)   It is also well settled and not disputed by either party that the question of the reasonableness or unreasonableness of such a rule is one to be determined by the court, and is not to be submitted to the jury. See *Vedder* v. *Fellows*, 20 N. Y. 126;

*Ill. Central R. R. Co.* v. *Whittemore,* 43 Ill. 420; *Wolsey* v. *Lake Shore & M. S. R. R. Co.,* 33 Ohio St. 227; *Hoffbauer* v. *The D. & N. W. R. Co.,* 52 Ia. 342; *Louisville & Nashville R. R. Co.* ˙v. *Fleming,* 18 Am. & Eng. R. R. Cas. 347; *Ry. Co.* v *Hardy,* 55 Ark. 134; *Central of Ga. Ry. Co.,* v. *Motes,* 117 Ga. 923; *Burge* v. *Ga. Ry. & Electric Co.,* 56 Am. & Eng. R. R. Cas. (N. S.) 223, and other cases, *infra;* 1 Elliott on Railroads, § 202; 1 Thompson on Trials, § 1057.

The plaintiff, in argument, contends that the rules set up by the defendant are unreasonable, because they cause great inconvenience and annoyance to passengers without benefit to the traveling public; because they are solely for the benefit of the defendant, in keeping a check upon dishonest conductors (admitting however, that the device is effective for such purpose); because they are a reflection upon the honesty of every conductor in the defendant's employ, and do not serve the convenience of the conductor in keeping account of the fares collected; and because the adoption of the fare-registering device in question is unnecessary even to protect the defendant from dishonest conductors, suggesting that the defendant, like all carriers of passengers, has a right to demand that passengers procure tickets before entering the cars, and that a rule requiring the presentation of a ticket by the passenger would be a proper and effective check upon the dishonesty of conductors.

We are of the opinion that none of the objections urged by the plaintiff, as against the reasonableness of the rules in question, are tenable.

The plaintiff cites no authorities even tending to show that the rules here in question are unreasonable; he cites only the case of *Kennedy* v. *Birmingham Railway, Light & Power Co.,* 138 Ala. 225, 230, in which one question only was presented, viz.: "The reasonableness of a regulation of the defendant company requiring the plaintiff as a passenger to pay in cash a greater sum than is charged by it for a ticket between the same points." . . . The plaintiff had no ticket, and there was no ticket office where he could buy a ticket conveniently; and so it was held as to him, that the enforcement of the rule was unreason-

able, and that the rule furnished no defence to his ejectment from the car.   The court says, p. 230: "All the cases agree that carriers of passengers may require persons to purchase tickets before taking passage on their cars, and to this end may adopt a rule or regulation establishing a higher rate to be paid to the conductor than the rate charged for a ticket.   But to justify a discrimination in the rates, the carrier must provide the proper facility and accommodation for so purchasing the ticket.   If the carrier fails to give the passenger a convenient and accessible place and an opportunity to buy his ticket before entering the car, the regulation is unreasonable and void and is no defense to an action brought by the passenger for his ejection by the conductor after he has paid the ticket rate."  (Citing and discussing a number of cases.)   And the plaintiff also cites 2 Hutchinson on Carriers, section 1032, where the right of carriers of passengers to make reasonable rules requiring the purchase and exhibition of tickets is discussed, and upheld.

It being conceded by the plaintiff, and being in accordance with his own citations of authority, as well as with the numerous other cases herein cited, that it is well settled to be a reasonable rule that a carrier of passengers may require the passenger to purchase a ticket before entering the cars, and to present the same to the conductor upon request, provided the carrier furnishes proper facility and accommodation for the passenger to purchase such ticket, we think the portion of the rule here under consideration, requiring the passenger to present a nickel (five-cent piece) to the conductor in payment of his fare, is quite closely analogous to the ticket requirement, and imposes no greater burden upon the passenger than the rule requiring the purchase of a ticket; in fact, the burden upon the passenger is much less under the nickel (five-cent-piece) rule here in question, than under the ticket rule, inasmuch as under the ticket rule, as generally applied, the passenger must purchase his ticket at one or more specified stations of the carrier, and is not allowed to purchase it of the conductor; while, under the nickel rule here in question, every conductor becomes a ticket agent and every car a station; where the

equivalent of the ticket may be purchased. So that, in our opinion, that portion of the rule which requires the passenger to present a nickel to the conductor, and to purchase one of the conductor, if the passenger has none, is a simplification of the ticket rule, in favor of the passenger, and favors the passenger to that extent, and is entirely reasonable.

The only portion of the rule that remains to be discussed, then, is the requirement that the passenger's nickel, either the one which he originally had or the one which he has purchased of the conductor, shall be inserted by the passenger in the fare-registering box held in the conductor's hand, instead of in the hand of the conductor itself. The device in use by the defendant corporation is called the Rooke Automatic Register, one of which was exhibited to the court, and its workings explained, at the argument of this case. It consists of a small nickel-plated box, of convenient size to be held in the hand, of neat appearance, with a coin-slot conveniently placed; and the manner of paying fares required by the defendant's rule involves simply the partial insertion, by the passenger, of a nickel into the slot. As soon as the edge of the nickel touches certain fingers or levers within the slot, the coin is automatically drawn in by the mechanism, and at the same time the fare is registered, and the operation is complete. This involves no more labor or delay or trouble on the part of the passenger than the act of placing the coin in the conductor's hand, and the automatic grasp of the coin by the machine is positive and certain; whatever of delay or trouble may be involved in the obedience to the rule comes from the necessity of making change in case the passenger is not provided with a nickel and is obliged to obtain one from the conductor; and this, as we have already seen, is so far analogous to the principle of the rule regarding the purchase of tickets that we regard the settled law of the cases heretofore cited as amply supporting the principle contended for by the defendant in this case.

It is quite obvious that the rules in question in this case are far less burdensome to the passenger than many rules regarding the manner of payment of fares, purchase, and showing

of tickets, taking tranfers, making change, and other matters incident to the passenger's right to carriage, which have been held to be reasonable by courts of undoubted authority. (See cases cited *supra*.)   See also *Burge* v. *Georgia Ry. & El. Co.* 56 Am. & Eng. R. R. Cas. (N. S.) 223; *Knoxville Traction Co.* v. *Wilkenson,* 45 Am. & Eng. R. R. Cas. (N. S.) 763; *Funderburg* v. *Augusta & Aiken Ry. Co.* 53 Am. & Eng. R. R. Cas. (N. S.) 281; *Yorton* v. *M., L. S. & W. Ry. Co.* 6 Am. & Eng. R. R. Cas. 322; *Birmingham Ry. L. & P. Co.* v. *Yielding,* 53 Am. & Eng. R. R. Cas. (N. S ) 285; *Same* v *McDonough,* 44 So. Rep. 960; *Montgomery* v. *Buffalo Ry. Co.,* 165 N. Y. 139; *Nye* v. *Marysville &c. St. Ry. Co.* 97 Cal. 461; *Ketchum* v. *N. Y. City Ry.* 118 App. Div. 248; *Sickles* v. *Brooklyn Heights Rd.Co.,* 113 App. Div. N. Y. 680, 99 N. Y. Supp. 953; *Percy* v. *St. Ry. Co.,* 58 Mo. App. 75; *Faber* v. *C. G. W. Ry. Co.,* 62 Minn. 433.

None of these rules, sustained above as reasonable, contributed to the convenience of the passenger.  All of them required affirmative action or restraint, involving some inconvenience on his part, and they were sustained on the ground that a carrier should be allowed to adopt rules which tend reasonably to insure to it the return allowed by law for services rendered.   The difficulties incident to the collection of the moneys due the defendant are apparent to any observer, and are admitted by the plaintiff in his brief.  Thousands of employees, on comparatively small salaries, must, from the nature of the conditions surrounding the street car business, be entrusted with the collection, from thousands of passengers, during the day's run, of sums exceedingly small in amount in each transaction, but large in the aggregate.  Assuming that 100,000,000 nickels are paid, during the course of a year, by passengers, to the agents of the defendant company, it is clear that an automatic registering device of the character here under consideration, which imposes only slight (if any) inconvenience upon the passenger, and which is of such manifest aid both to the company and to its conductors in simplifying the accounting for and return of fares collected, securing accuracy, and tending to prevent fraud and mistake, should be approved

rather than condemned.   The plaintiff shows, at the most, nothing but that slight degree of annoyance incident to the enforcement of these rules; which will generally be found to exist on the part of a certain few passengers, who are always likely to manifest impatience with the use of new devices, even when they are of obvious utility.   But there are, in our opinion, several cases of such close analogy to the case at bar, involving a consideration of devices so nearly like that here in use, as related to the question of the convenience of the passenger, as well as to that of the advantage to the company and its conductors, that they are to be regarded as quite conclusive, upon many of the objections urged by the plaintiff.

In the case of *Kitchen* v. *Saginaw Circuit Judge* (See 117 Mich. 254), an unreported case in the Circuit Court for the county of Saginaw, in chancery, one Morris C. L. Kitchen filed an application for leave to bring an action at law against the receivers of the Union Railway Company, setting forth the facts that plaintiff boarded a car of the Union Street Railway Company, took his seat, "and when approached by the conductor tendered to him five cents in payment of his fare, but the conductor refused to receive the same and requested the petitioner to drop the same in a small metal box which he held in his hand.   This he (the petitioner) declined to do. Whereupon the conductor advised him that a rule had been made for the government of the road, by the receivers, requiring passengers to put fare in boxes carried by the conductors." Upon a second refusal, petitioner was ejected without undue force.   And the Circuit Court held that the rules prescribed by the receivers "are reasonable; that they do not impose any additional burdens or hardships upon the passengers. . . . and that the petition is, therefore, denied."   This decree was sustained by the Michigan Supreme Court on April 19, 1898, and subsequently approved in the reported case of *Morley et al.* v. *Saginaw Circuit Judge*, 117 Mich. 246, 254.   It is worthy of note that this box was also an automatic register, and the circuit judge comments on its advantages, both to the company and the conductors, in that "By the new system (cash

register box in the hand as compared with the old registering system of ringing up fares by the conductor) there can be no shortage to be made up by the conductors, or losses to be borne by the company. The box properly registers every fare and all the money and tickets received are in the box and there is no chance for mistake or fraud and no settlements are required at the end of the day with the conductors."

In *Morley* v. *Saginaw Circuit Judge*, 117 Mich. 246 (1898) (*supra*), the reasonableness of a regulation requiring payment into a cash register, rather than into the conductor's hand, is sustained; and in an able opinion, which we think completely answers the objection that the use of a cash register reflects on the honesty of conductors as a class, the court says (p. 249): "Conductors of street cars deal with a great number of persons, some of whom are entering and leaving the cars frequently. It often happens that change must be made, and there are opportunities for mistakes. It is not unreasonable to assume that, like persons in all callings, some of the employees of street-car companies will yield to temptation, when presented. Every one at all familiar with business upon a large scale knows that it is desirable to have it systematized that mistakes or fraud in its conduct shall not occur. Officials, both of the state and nation, and officers charged with the management of banks, railroads, and other corporations are surrounded by checks and safeguards calculated to do away with the possibilities of frauds or mistakes. The cash register is to be found in most places of business. Upon the elevated roads in the large cities, the passenger pays his fare before he enters upon the platform, over which he must pass to get admission to his train. Every one recognizes the checks and safeguards, as proper to be used, and no one has a right to regard them as an imputation upon the honesty of any individual using them. Their use is simply a recognition of what we all know to be a fact, with humanity constituted as it is,—that, in the conduct of a large business by many persons, there is a liability to make mistakes, and a possibility of the commission of frauds. The Great Teacher, in that prayer which is the model of all prayers,

prayed, ' Lead us not into temptation, but deliver us from evil.' It can readily be seen how the unintelligent or dishonest might object to these checks and safeguards, but it is difficult to understand how the honest and intelligent should object to any practical method which would reduce the probability of mistakes, or the opportunities for the commission of fraud, to the minimum."

In *Elder* v. *International Railway Company*, 122 N. Y. Supp. 880, Mr. Justice Wheeler, on May 3, 1910, held that a rule forbidding conductors to take fare from passengers, and requiring the passenger, himself, to deposit his fare in a box at the door on a pay-as-you-enter car, was a perfectly valid and reasonable regulation.

In *Nye* v. *Marysville, etc., St. Ry. Co.*, 97 Cal. 461 (1893), it was held that a rule requiring a passenger on a street car to deposit his fare in a box on entering the car was "reasonable and necessary to prevent fraud upon the company," non-compliance with which would justify ejection.

In *Curtis* v. *Louisville City Ry. Co.*, 94 Ky. 573 (1893), 21 L. R. A. 649, the court said (p. 576): "By the rules of the appellee, a passenger that gets on a street car must deposit his fare in the box within one block.    The driver must not receive the fare, etc.    .   .   .    These rules are reasonable, and the appellant was aware of them."

In *Commonwealth* v. *McGinn*, 29 Leg. Int. 124 (1872), a case at *nisi prius*, the court charged the jury that a rule requiring payment into a box, and not to the driver, was a reasonable regulation, and says that the passenger, by his contract, obligates himself not only to pay the established fare, *but to observe the reasonable regulations* made by the defendant, among which "the mode and time of payment were of the first importance."

At the argument of this cause the question was raised, whether the rules in question were in anywise in conflict with the legal tender statutes of the United States.    No such question is raised by the pleadings in the case, nor suggested in the questions certified for our determination.    But as the parties

have argued the question upon our own suggestion, we will proceed to consider it.

(3)    Vol. 2, U. S. Comp. Stat. 1901, § 3587 (1873), provides that "the minor coins of the United States shall be a legal tender, at their nominal value for any amount not exceeding twenty-five cents in any one payment." This statute undoubtedly makes the tender of five separate cent pieces legal tender for a debt of five cents. The question therefore arises, whether the refusal to take the five separate cent pieces, under the conditions described in the second question certified, violates the legal tender statute quoted above, and whether the regulation, as applied to the facts therein set forth, is unreasonable as a violation of a statutory right given the plaintiff by the laws of the United States. This objection is not levied at that part of the rule requiring a passenger to put *money* into a box in payment of fare, but to the fact that only one kind of a coin can be so placed by him, namely, a nickel, and that the tender of five separate cent pieces, the exact equivalent under the statute quoted above, is refused except on the condition that the passenger exchange them for a nickel supplied by the conductor.

Upon careful consideration of this question, and in view of our finding, above set forth, that the rule requiring the presentation of a nickel by the passenger, in payment of his fare, is so closely analogous to the ticket-rule (which has been so frequently upheld) as to be reasonable and valid upon similar grounds; and further, in view of the fact that the conductor does not refuse the five separate cents on the ground that their purchasing power is not equivalent to a nickel, and not sufficient for full payment of a fare, but, on the contrary, is willing to and does in fact accept them and tenders a nickel in exchange therefor, we are satisfied that there is no such refusal to accept the money in payment of a fare, on the part of the conductor, as constitutes a violation of the legal tender statutes. If the plaintiff offered the five separate cent pieces, and received a ticket, and was required to insert the ticket into the register, no one would contend that the legal tender statute was violated. The transaction, as set forth in the plaintiff's declaration, however,

is, in our view of it, essentially the same, with the exception that a nickel is given in exchange for the five separate cent pieces rather than a ticket.    We hold, therefore, that the regulation adopted by the defendant is not a violation of the legal tender statute quoted above, and is not, because of that statute, to be deemed unreasonable.

(4)    It was also urged, in the oral argument, that a passenger has, under the charter of the defendant company, and under the transfer act, a right to demand transportation for five cents and no more, and that the requirement that he pay his fare into a box is in effect demanding a greater amount of fare from him than is permitted by law.    The fallacy in this position lies in assuming that the establishment of a maximum amount of fare abrogates the power of the carrier to make reasonable regulations.    The establishment by law of a maximum rate of fare has never been construed as requiring transportation by the carrier of every passenger presenting the requisite fare unless he also conforms to the reasonable regulations established by the carrier; otherwise, in the absence of express statutory authority, the carrier would be powerless to eject intoxicated or other unfit persons, or to make any of the numerous rules which it is under duty to make for the safety of the passenger and the expediting of its business.

In *Reese* v. *Pa. R. R. Co.*, 131 Pa. St. 422, the contention stated above was squarely raised, and the question decided in favor of the carrier's power to make regulations as to mode of payment in spite of a maximum rate limit in the charter. There the defendant adopted a train charge in excess of the ticket charge, and also in excess of the maximum rate per mile allowed by its charter, the excess over ticket fare being refunded on the presentation of a rebate slip at defendant's ticket office at the end of the journey.    And it was held that the carrier had a right "to make reasonable regulations, not only as to the amounts of fares, but as to time, place, and mode of payment;" and that the charter provision was a restriction "of the *amount* of collection, not of the *mode* of collection; the

protection of the traveler from excessive demands, not interference with the time, place, or mode of payment."

In *Percy* v. *St. Ry. Co.*, 58 Mo. App. 75, it was held that a charter provision requiring that the defendant company give a continuous trip on parallel lines for one fare, did not forbid a regulation requiring the passenger to ask for a transfer designating the particular place from which he wished to board the second car.

In *Crandall* v. *International Ry. Co.*, 117 N. Y. Supp. 1055, it was held that the defendant company might require a passenger not only to obtain a transfer, but to demand it at the time he paid his fare, and to give the destination line when asking for a transfer; although the company was compelled by law to carry a passenger on a continuous trip between any two points on its road by the most direct route for no more than a single fare.

In all of these cases something more was demanded of the passenger than the single act of payment, although in each case the full amount legally demandable had been given. The fixing of the amount of fare, therefore, in no way prevents the adoption of the mode of payment contended for in this case.

The plaintiff has wholly failed to show that the rules in question are in anywise so burdensome or inconvenient to the passenger that they should be deemed to be unreasonable. He admits the necessity of some regulation, as to the method of payment and collection of fares, to enable the defendant to receive its lawful compensation and to prevent fraud and mistake. The regulation in use tends to secure the end desired.

We are therefore of the opinion, that, both upon principle and upon authority, the rules set forth in the two questions submitted to this court for its determination are reasonable, and we answer both of said questions in the affirmative.

*C. M. Van Slyck, Frederick A. Jones*, for plaintiff.
*Joseph C. Sweeney, Clifford Whipple*, for defendant.
*Edwards and Angell*, for Rooke Automatic Register Co.
*Frank H. Swan, Francis B. Keeney*, of counsel.