thereafter acquire some of the stock. As was well said by Justice Bischoff at Special Term: "This alleged interest was so utterly remote, and indeed so fanciful, as to amount to nothing."

[5] The interest which will disqualify a judge to sit in a cause need not be large, but it must be real. It must be certain, and not merely possible or contingent; it must be one which is visible, demonstrable, and capable of precise proof. Inhabitants of Northampton v. Smith, 11 Metc. (Mass.) 390. The alleged interest inputed to Justice Brady measures up to none of these requirements, and we entertain no doubt of his qualifications to sit in the cause. Indeed, we think it very doubtful whether, strictly speaking, he would have been disqualified if he had owned stock in the Union Railway Company itself, although in such case the justice might, and doubtless would, have declined to sit to avoid possible criticism. Although Mr. Whitridge is sued as receiver, etc., it is manifest that the acts or omissions for which it is sought to recover penalties were his personal acts or omissions, and not those of the railway company, and, if judgment had gone against him, it would have been one against him personally, and not one against him as receiver or against the corporation. It may be that the federal court in passing upon his accounts as receiver would allow the judgment as a charge against the assets in his hands, but this question could not have come before Justice Brady. All he had before him was an action by the people against the individual who happened to be the receiver of the railway company.

It follows that the order appealed from must be affirmed, with $10 costs and disbursements. All concur.

---

### WEBER v. ROCHESTER, S. & E. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1911.)

1. CARRIERS (§ 12*)—PASSENGERS—TRANSFERS.

Under Railroad Law (Laws 1890, c. 565) § 101, now Consol. Laws 1910, c. 49, § 181, requiring street car companies to furnish passengers a continuous ride for one fare between any points within the city limits, and section 78, now section 148, providing that, if the tracks of one street car company are used by another company under contract, the latter cannot use such tracks in a manner inconsistent·with law applicable to its use by the owning company, where defendant interurban street car company had a contract with a local company for mutual transfer purposes within the limits of the city, a passenger was entitled to be carried for a single fare over the line of the local company and receive a transfer entitling him to transportation on defendant's line to his destination within the city limits.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

2. CARRIERS (§ 248*)—PASSENGERS—REGULATIONS.

Railroad companies may make and enforce reasonable regulations for conducting their passenger business without incurring liability for enforcing them in a proper manner.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 994–996; Dec. Dig. § 248.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CARRIERS (§§ 267, 356*)—PASSENGERS—TRANSFERS—PUNCHING TRANSFERS.
    Defendant interurban street car company contracted with a local company for mutual transfer privileges within the city limits, subject to the regulations contained in the transfers. Defendant's rules forbade the acceptance of a transfer unless the hour was properly punched thereon, and a transfer slip received by a passenger from the local company stated thereon that it was void 15 minutes after the hour punched on it, and that the passenger should see that the line and the time were correctly punched; but no time was punched on a transfer by the conductor of the local line, though it had been in fact received within 15 minutes from the time it was presented to defendant. *Held*, that the rule requiring the hour to be punched on the transfer was reasonable, so that the passenger could not recover damages from defendant company as for assault for being ejected.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 994–996, 1423–1432; Dec. Dig. §§ 267, 356.*]

Appeal from Trial Term, Monroe County.

Action by Gustave A. Weber against the Rochester, Syracuse & Eastern Railway Company. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Ernest I. Edgcomb, for appellant.
Henry R. Howard, for respondent.

McLENNAN, P. J. The facts are not in dispute. At all the times in question the defendant was a corporation engaged in operating a trolley railroad between Syracuse and Rochester. The local street railway system in Rochester was owned, controlled, and operated by the New York State Railways. By contract between such corporations, the defendant was permitted to enter the city of Rochester from the east, running its cars over the University avenue line to its intersection with Main street, and from there on the Main street line to the "Four Corners," so called, or central part of the city, and the defendant's cars in returning easterly passed over the same route to the city line.

It was stipulated upon the trial:

"First. That, on the day in question, there was an agreement in force between the defendant and the New York State Railways, or its predecessors, which provided, among other things, that passengers who paid fare on the defendant's cars within the city should be entitled to the transfer privileges of the city company, and that the city company's special transfers should be honored on the cars of the defendant to the Culver Road (the east line of the city), subject, however, to the transfer regulations contained on the transfers, and to the rules of the defendant company. That there was a good consideration for such agreement. Second. That on the day in question there was a rule of the defendant company in force forbidding a conductor to accept transfers unless properly punched as to line and hour."

On the 23d day of December, 1909, between 4 and 5 o'clock in the afternoon, the plaintiff paid his fare on one of the West avenue cars of the local company and asked for and received from the conductor a transfer to the University avenue line, and at the proper point he

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
    129 N.Y.S.—20

alighted and immediately boarded one of the defendant's cars going out University avenue. The conductor on that car refused to accept the plaintiff's transfer on the ground that no hour had been punched thereon by the conductor of the local company who delivered the transfer to him, and the conductor on defendant's car demanded payment of a cash fare, which the plaintiff refused to pay; whereupon the conductor, using no more force than was necessary, compelled plaintiff to alight and leave the car.

The transfer delivered to the plaintiff was of the regular kind issued upon the West avenue line of the local company and had printed on it the date, "Dec. 23," and bore the conductor's punch mark designating the University avenue line as the one to be taken. In conspicuous type there was printed on the transfer, "This transfer void fifteen minutes after the hour punched." On the margin were two columns of figures running from 1 to 12, one column marked "A. M." and the other "P. M."; but no hour was punched, and, as appears by the stipulation in question, on the day in question there was a rule of the defendant company in force forbidding a conductor to accept transfers unless properly punched as to line and hour. On the back of such transfer there was printed in plain type the following:

"Transfer Regulations. This transfer is issued subject to the rules of the company and must be obtained from conductor when fare is paid and passenger accepting same should see that line and time are correctly punched. A transfer showing more than two punch marks is void. If conductor refuses to accept transfer, fare should be paid and the circumstances promptly reported to the general offices of the company. This is not a stop-over check, is not transferable, and is good only for person to whom it was issued, taking car at junction point indicated within time limited. Attention is called to the Penal Code, making it a punishable offense to give away or otherwise misuse a transfer."

This was signed:

"New York State Railways, Rochester City Lines, E. J. Cook, Vice President."

It is practically conceded by the appellant that its obligation with reference to local passengers riding upon its cars within the city limits is the same as that imposed upon the local company, and that no traffic agreement between the two companies and no rule of either company could be effective to relieve either of them from any obligation imposed by law for the benefit of the traveling public.

[1] Section 101 of the railroad law (Laws 1890, c. 565), now section 181, c. 49, Consol. Laws 1910, in force in December, 1909, required the local company to furnish a passenger a continuous ride for one fare from any point on its system to any other point thereon within the city limits, and section 78 of the railroad law, now section 148, c. 49, Consol. Laws 1910, then provided that, if the tracks of one company are used by another company for its cars under a contract, the latter company cannot use the tracks "in a manner inconsistent with the provisions of the law applicable to its use by the corporation owning the same."

Under such provision of the statute, there can be no doubt but that the plaintiff was entitled to be carried for a single fare over the West

avenue line of the local company and to receive a transfer from the conductor on such line which would enable him to ride to his home or destination on the University avenue line, upon any car traversing such line, although owned and operated by the defendant, provided, however, the passenger complied with the reasonable rules of the company in obtaining such transfer and in using the same.

Upon the uncontradicted evidence the plaintiff was entitled to receive from the conductor in charge of the car of the local company a transfer which would entitle him to ride upon any car of the defendant going east on University avenue to the city line, provided he boarded the defendant's car within 15 minutes after leaving the car of the local company, and if the conductor who assumed to issue such transfer did so negligently and in such manner that the plaintiff was prevented from availing himself of the privileges to which he was entitled, to wit, to ride for a single fare from the point where he entered the car of the local company to the east line of the city over the University line, he was entitled to recover such damages from this defendant as resulted to him from the neglect or omission of the first conductor and any penalty imposed by statute for his benefit. But is the defendant liable for an assault committed upon the plaintiff by its conductor, because of the fact that he ejected the plaintiff from the car upon his refusal to comply with the rules of the defendant? The answer to such question must depend upon whether such rules were reasonable and were reasonably enforced. If such rules were not reasonable, undoubtedly the passenger would be justified in resisting to the utmost their enforcement.

[2] Railroad companies carrying passengers have the right to make reasonable rules and regulations for conducting their business, and they and their agents incur no liability in enforcing them in a proper manner. Elmore v. Sands, 54 N. Y. 512, 13 Am. Rep. 617.

In the case of Monnier v. N. Y. C. & H. R. R. Co., 175 N. Y. 281, 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. Rep. 619, the holding of the court was stated in the headnote as follows:

"A passenger on a railroad train must subordinate his conduct to all rules of the company that are reasonable and valid. It is the duty of the conductor to execute and enforce them; if there is some fact or omission behind the rules not apparent upon the face of the transaction, the passenger must resort to some other remedy for his grievance besides the use of force against the conductor, and if, under such circumstances, he invites a personal collision with him, he puts himself in the wrong, and cannot sue the company or the conductor for damages for assault and battery."

[3] In the case at bar we conceive that the only question involved is whether the rule adopted by the defendant was, under all the circumstances, reasonable; it not being claimed that such rule was enforced in an unreasonable manner. If it was reasonable and was reasonably enforced, we think, under the authorities, an action for assault will not lie against the defendant or its agent notwithstanding that the plaintiff may have a right of action for damages sustained by him because of the neglect of the first conductor to issue to him a proper transfer and which occasioned his ejection from defendant's car.

As we have seen, by an agreement between defendant and the local company, the defendant was permitted to run its cars over the tracks of the local company upon University avenue and upon Main street to the four corners and to return over the same route to such city line, and the defendant by the terms of such agreement was required to carry any passenger desiring to go easterly over such line without any additional fare, provided such passenger presented to the conductor of defendant's car a transfer which showed upon its face that it had been issued by the conductor of the local company's car not more than 15 minutes previous to the time when he entered defendant's car, and the agreement, in effect, provided that, unless the transfer so issued by the local company indicated the time when it was issued, it must not be received in payment of the fare of a passenger upon defendant's car.

The purpose of such rule or regulation, and of the agreement made between the two companies in that regard, is apparent. Without such rule the conductor upon the local company's car could issue any number of transfers without punching the time, and by such omission impose the duty upon the conductor of the defendant to receive them in payment of the fare of passengers if offered at any time within 12 hours after their issuance. This, as it seems to me, would impose an unreasonable burden upon the defendant and one which, if assumed, would be in direct violation of the agreement which it had made with the local company. We therefore conclude that the rule and regulation which prohibited the defendant's conductor from accepting the transfer in question, which in no manner indicated when it had been issued, was reasonable, and that such rule having been enforced in a reasonable manner, the plaintiff having refused to pay a cash fare, and the conductor upon such refusal having ejected him from the car, using no more force than was necessary, no cause of action for assault was made out.

While the amount of the verdict in this case is not large, and from a money standpoint it is not very important, the principle involved is of very vital importance. May a passenger upon a railroad train or street car who presents to the conductor a transfer, ticket, or token, which as he claims entitles him to transportation, but which is not issued in accordance with the reasonable rules of such company, no matter through whose fault, insist that such transfer, ticket, or token shall be received in payment of his fare and seek to enforce his alleged rights by resistance to the conductor, which involves the use of force and a fight between the conductor and the passenger to the annoyance of all the other travelers in such car?

I am unable to distinguish upon principle the case at bar from the Monnier Case, supra. In that case the rule of the company, which was held to be reasonable, required that a passenger upon defendant's train should present a ticket, or, in case he did not, to pay five cents additional. Another rule of the company required that the ticket office at the station should be kept open for one hour before the departure of a train to enable persons intending to board such train to purchase tickets for their journey. The plaintiff in that case insisted that the ticket office at Oriskany was not open within that time pre-

vious to the departure of the train, and that therefore it was practically impossible for him to obtain such ticket, and upon that ground, which he asserted to be a fact to the conductor, he refused to pay the additional fare, and he was forcibly ejected from the car. The court said:

"But the conductor could not know what the fact was in that respect and was not bound to take the passenger's word for it, nor could he try and decide the question upon the word of the other passengers who procured tickets at the same station. The simple duty of the conductor is to execute and enforce all reasonable rules and that of the passenger to obey them. If there is some fact or omission behind the rules not apparent upon the face of the transaction, the passenger must resort to some other remedy for his grievance besides the use of force against the conductor."

In the case at bar plaintiff asserted that he had procured the transfer which he offered to the conductor within 15 minutes of the time when he entered defendant's car. The conductor insisted that he could not accept the passenger's word in that regard, but that the rule was imperative that, unless he produced a transfer which indicated that fact upon its face, it became his duty to collect a cash fare or to compel him, the passenger, to leave the car.

A large number of cases are cited by appellant's counsel which, as it seems to us, are authority for the proposition that the rule of the defendant company which in effect prohibited its conductor from accepting a transfer issued by the local company which was not punched as to the hour when issued was reasonable, and therefore that the passenger was bound to comply therewith, and that if he failed to do so, and as a result was ejected from the car, he cannot maintain an action for assault and battery.

In Elder v. International Ry. Co., 68 Misc. Rep. 22, 122 N. Y. Supp. 880, recently decided by this court, the plaintiff boarded a "pay as you enter" car, presented a transfer which he supposed was valid, and took his seat. The conductor discovered that the transfer did not conform to the regulations of the company and refused to accept it. He entered the car and demanded that the plaintiff deposit his fare in the box. This plaintiff refused to do, but tendered the required five cents. Plaintiff's ejection followed. In an action for assault, it was held that the company was protected by its rule requiring passengers to personally deposit their fares, and that such rule was reasonable.

In Barker v. Central Park, N. & E. River R. R. Co., 151 N. Y. 237, 45 N. E. 550, 35 L. R. A. 489, 56 Am. St. Rep. 626, it was held that a rule of a street car company requiring its conductors to furnish change to passengers to the amount of $2 only was reasonable, and that a tender by a passenger of a $5 bill in payment of his fare was properly refused by the conductor, and that he was justified in putting the passenger off the car.

In Taylor v. Nassau Electric R. Co., 32 App. Div. 486, 53 N. Y. Supp. 5, it was held that a passenger upon a car unreasonably delayed had no right to insist upon boarding another car and riding without payment of another fare in violation of the rules and regulations of the company.

. In Mullin v. Long Island R. R. Co., 136 App. Div. 733, 121 N. Y. Supp. 458, plaintiff purchased an excursion round-trip ticket. The outgoing conductor punched by mistake the return ticket, and thereby apparently canceled it. Plaintiff tendered such canceled ticket for her return trip, but the conductor refused to accept it and ejected the plaintiff. Held, that the rule requiring an uncanceled ticket as evidence of the right for transportation was reasonable, and that it was the duty of the conductor to enforce such rule.

In Bradshaw v. South Boston R. R. Co., 135 Mass. 407, 46 Am. Rep. 481, the defendant made a practice of giving transfers to its various lines. Plaintiff received by mistake of the conductor a wrong transfer and a different one from which he had asked for. On presentation to the conductor of the car on the second line, such transfer was refused, plaintiff, refusing to pay his fare, was ejected, and a tort action to recover damages for being thus expelled. followed. It was held that he could not recover.

From an examination of the authorities above referred to and of the many other cases of like import, to which attention might be called, we conclude that the rule of the defendant which prohibited its conductor from accepting a transfer issued by the conductor of the local company, which was not punched as to time and did not upon its face indicate when it was so issued, was reasonable; that the defendant's conductor was therefore justified in refusing to accept the same and in demanding a cash fare from the plaintiff; that, upon plaintiff's refusal to pay such cash fare, such conductor was justified in ejecting the plaintiff, and for so doing no action for assault will lie against the defendant.

It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide event.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur.